WILLIAM LEE BURWELL AND WILLIAM TAYLOR WILSON v. JAMES H.
GRIFFIN, INDIVIDUALLY AND IN HIS CAPACITY AS CHIEF OF POLICE OF THE CITY OF
OXFORD; H. T. RAGLAND, JR., INDIVIDUALLY AND IN HIS CAPACITY AS CITY
MANAGER OF THE CITY OF OXFORD; STATE OF NORTH CAROLINA; AND THE CITY
OF OXFORD, NORTH CAROLINA

No. 839SC289

(Filed 20 March 1984)

**Municipal Corporations § 11.1— demotion of police officers—personnel policy procedures complied with**

In an action for damages and injunctive relief brought by plaintiffs, after
being demoted from their former positions of lieutenants to those of
patrolmen, against the City of Oxford, its City Manager and Chief of Police, all
procedures pertaining to the demotion of a police officer, as such procedures
are contained in the Police Rules and Regulations and City Personnel Policy,
were either strictly or substantially complied with, and where the procedures
were substantially complied with, the purposes underlying the municipal or-
dinances were served and no prejudice resulted to either plaintiff.

Judge JOHNSON concurring.

APPEAL by plaintiffs from *Hobgood (Robert), Judge*. Judg-
ment entered 3 December 1982 in Superior Court, GRANVILLE
County. Heard in the Court of Appeals 13 February 1984.

This is an action for damages and injunctive relief brought
by plaintiffs after being demoted from their former positions of
lieutenants to those of patrolmen against the City of Oxford, its
City Manager and Chief of Police in both their individual and of-
ficial capacities. Plaintiffs allege that certain written personnel
policy procedures adopted by the commissioners of the defendant
City of Oxford were not followed by defendants relative to the
plaintiffs' demotions.

The provisions of the City of Oxford Police Department Rules
and Regulations [hereinafter "Police Rules and Regulations"] and
the City of Oxford, North Carolina Personnel Policy [hereinafter
"City Personnel Policy"] pertinent to this action are as follows:

Police Rules and Regulations

Rule II-1, DISCIPLINARY AUTHORITY OF CHIEF:

After consulting the City Manager, the Chief of Police is authorized, upon his determination of just cause to: . . . recommend to the City Manager the dismissal or reduction in rank of any officer violating any provision of these Rules.

Rule II-8, RIGHTS OF SUSPENDED OFFICER, HEARING:

(a) An officer who has been suspended, or whose dismissal or reduction in rank is recommended to the City Manager by the Chief of Police, shall receive a letter from the Chief of Police stating:

  (1) a brief summary of the facts and circumstances of any conduct constituting a violation of any provision of these Rules:

  (2) the section number of the Rule violated, or reference to the Rule violated;

  (3) that dismissal or reduction in rank has been recommended, if such is the case.

Rule II-8(b), dealing with an officer's right to a hearing, was rescinded and replaced by Rule IV section 15.0 of the City Personnel Policy, "The Grievance Procedure." Section 15.0 outlines a three-step grievance hierarchy, which may be initiated by an employee or employees who feel "the need to resolve a work related problem, dissatisfaction or complaint." Step one provides for an informal discussion with the immediate supervisor, step two for an appeal to the department head, and step three for an appeal to the City Manager. Step three states that the City Manager "shall review the written report" produced by step two, and then exercise the option of either appointing a grievance committee or personally conducting a hearing.

Rule II-8(c) of the Police Rules and Regulations remains in effect:

Upon any hearing before the City Manager, the affected officer shall have the right to:

(1) presence and assistance of private legal counsel.

(2) introduce evidence relevant to the issues raised.

(3) examine or cross-examine all witnesses testifying.

(4) examine any document or writing contained in his [or her] personnel file if and only if such document or writing is used by the City Manager in reaching [a] decision.

Rule II-9, DUTIES OF CITY MANAGER ON HEARING:

(a) At any hearing before a City Manager, upon timely request of an officer who has been suspended or whose dismissal or reduction in rank has been recommended, the City Manager shall:

   (1) set a time and place for a hearing . . . ;

   (2) advise the affected officer in writing of the time and place of the hearing . . . ;

   (3) exercise all powers of a presiding officer; hear all relevant testimony and evidence and rule on the admissibility thereof; make findings of fact and conclusions relating to the merits or justification of the suspension, or decide any action upon the recommendation to dismiss or reduce in rank and furnish a copy thereof to the affected officer as soon as practicable thereafter;

   (4) consider as the basis for any disciplinary action only those violations of these Rules set forth in the letter of the Chief of Police;

   (5) information, documents, or written material from an officer's personnel file submitted to the City Manager shall be made available for inspection by the officer.

City Personnel Policy

[III] § 4.0, Demotion:

While it is not a common practice, the City may find it appropriate to demote an employee as a result of unusual circumstances such as—

. . . .

(b) When an employee is not satisfied with, or unable to meet the requirements of his [or her] position.

IV, § 11.0, Conduct:

This section provides for certain penalties, including demotion, against a city employee who is guilty of certain specified infractions, including "[g]ross inefficiency, insubordination or refusal to perform assigned duties" and "[i]nsufficient regard for work rules and regulations."

The facts and circumstances surrounding the plaintiffs' demotions and the bringing of this action are as follows:

On 6 January 1982 and 11 January 1982 a document entitled "City of Oxford, North Carolina, Warning Notice," signed by defendant Chief of Police, was sent to each plaintiff respectively. These documents notified plaintiffs that their overall job performance was deficient, identified areas in which improvement must be made, and stated that the potential result of a failure to improve law enforcement activities might be the termination of their jobs.

The next document germane to the demotions is another warning notice addressed to each plaintiff. These notices, dated 30 March 1982 and 31 March 1982, contain more detailed information concerning plaintiffs' misconduct and were signed by the Chief of Police and the City Manager. There is some conflict as to whether plaintiffs actually received this second set of notices or whether the Chief of Police read the notices to them; however, it is not necessary to resolve this in order to dispose of this appeal.

According to the record, there was no further communication between the parties on the subject of their misconduct until the 13 August 1982 memoranda signed by the Chief of Police and the City Manager. These documents notified the plaintiffs that they had been demoted, and made reference to the earlier communications.

After their demotions, plaintiffs, apparently through their attorneys, requested hearings before the City Manager. Although the record does not specifically state that plaintiffs were proceeding under step three of the City Personnel Policy's Grievance Procedure, presumably they were. These hearings were con-

ducted on 31 August 1982 for plaintiff Wilson and on 2 September 1982 and 9 September 1982 for plaintiff Burwell. Defendant City Manager presided over these hearings. Transcripts were made of these proceedings, although testimony of several witnesses was omitted from the transcript of plaintiff Burwell at the request of the City Manager. On 23 September 1982 the City Manager issued his decisions upholding the orders of demotion.

Plaintiffs subsequently brought this action charging defendants with numerous procedural and due process violations connected with their demotions. Upon the plaintiffs' motion, Judge Hobgood entered a show cause order ordering the defendants to show cause as to why the plaintiffs should not be reinstated. At the ensuing 22 November 1982 hearing, Judge Hobgood announced in open court that the decision of the City Manager demoting the plaintiffs would be reviewed as a petition for certiorari. In the order resulting from this hearing, Judge Hobgood affirmed the 23 September 1982 decisions of the City Manager demoting plaintiffs and denied all requests for preliminary or permanent injunctive relief. From this order plaintiffs appeal.

*Edmundson & Catherwood, by John W. Watson, Jr. and Robert K. Catherwood, for the plaintiff appellants.*

*Haywood, Denny & Miller, by J. A. Webster, III and George W. Miller, Jr., for defendant appellees James H. Griffin, individually and in his capacity as Chief of Police of the City of Oxford, and H. T. Ragland, Jr., individually and in his capacity as City Manager of the City of Oxford.*

*John H. Pike, for defendant appellee James H. Griffin, individually.*

*Royster, Royster & Cross, by T. S. Royster, Jr., for defendant appellee H. T. Ragland, Jr., individually.*

*Watkins, Finch and Hopper, by Daniel F. Finch, for defendant appellee City of Oxford.*

VAUGHN, Chief Judge.

Before turning to the central issue of this appeal, that is, whether defendants abided by the procedures associated with plaintiffs' demotions, we must first address the threshold question

of whether Judge Hobgood's order is currently appealable or whether plaintiffs have brought this appeal prematurely. Plaintiffs' first two assignments of error relate to appealability. Plaintiffs contend that Judge Hobgood's order is appealable because it affects a substantial right or, alternatively, because it determines the merits of the action.

Ordinarily, an appeal lies only from a final judgment, but an interlocutory order which will work injury if not corrected before final judgment is appealable. *Investments v. Housing, Inc.*, 292 N.C. 93, 100, 232 S.E. 2d 667, 672 (1977). There seems to be some confusion among the parties over whether Judge Hobgood's order is final or interlocutory in nature. A final judgment disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court, *Atkins v. Beasley*, 53 N.C. App. 33, 279 S.E. 2d 866 (1981), while an interlocutory ruling does not determine the issues but directs some further proceeding preliminary to the final decree. *Blackwelder v. Dept. of Human Resources*, 60 N.C. App. 331, 299 S.E. 2d 777 (1983). The order affirmed the demotion of plaintiffs. For the reasons hereinafter stated, if that order is affirmed no issues remain for trial. The order is, therefore, appealable.

We now turn to the key issue on this appeal: whether defendants committed procedural errors in demoting the plaintiffs from lieutenants to patrol officers.

Rule II-1 of the Police Rules and Regulations sets out the procedure to be followed by the Chief of Police if the Chief wishes to sanction a member of the department; the rule describes the limits of the chief's authority in these situations. The language of Rule II-1 is limiting language; it empowers a Chief of Police who wishes to demote a member of the force to recommend such action to the City Manager. The words of Rule II-1 set out the limits of a police chief's authority to achieve a demotion. According to Rule II-1, the Chief cannot unilaterally accomplish a demotion. Instead, the Chief must first consult with the City Manager and then recommend a demotion to the manager if the Chief believes such action appropriate.

We reject the construction of Rule II-1 proposed by the defendants, that the language of Rule II-1 is permissive language, and that it is optional on the part of the Chief of Police to first

recommend the demotion of a member of the force before a demotion can be effected. If this interpretation of Rule II-1 is accepted, and the recommendation of the Chief is not required to effect a demotion, then the net effect of the Police Rules and Regulations and City Personnel Policy would be to allow the City Manager to arbitrarily suspend, demote, or terminate a police officer without any input from the police department. Such a construction of the municipal ordinances is unduly harsh and finds support neither in reason nor in basic principles of contract construction. *See DeBruhl v. Highway Commission*, 245 N.C. 139, 145, 95 S.E. 2d 553, 557 (1956) (instruments should receive sensible and reasonable constructions and not ones leading to absurd consequences or unjust results). In construing a statute or ordinance a court is to avoid interpretations leading to absurd results, *Variety Theaters v. Cleveland County*, 282 N.C. 272, 275, 192 S.E. 2d 290, 292 (1972), *appeal dismissed*, 411 U.S. 911, 36 L.Ed. 2d 303, 93 S.Ct. 1548 (1973); rather, ordinances are to be given reasonable interpretations. *Woodhouse v. Board of Commissioners*, 299 N.C. 211, 225, 261 S.E. 2d 882, 891 (1980) (noting that rules of statutory construction apply equally to ordinances). *See also Douglas v. Wirtz*, 232 F. Supp. 348, 352 (M.D.N.C. 1964), *vacated*, 353 F. 2d 30 (4th Cir. 1965), *cert. denied*, 383 U.S. 909, 15 L.Ed. 2d 665, 86 S.Ct. 893 (1966) (statute is presumed to have the most reasonable operation that its provisions allow). The "most reasonable" construction of Rule II-1 is one that mandates the procedural safeguards of Rules II-8 and II-9 to come into play before a police officer can be suspended, demoted or dismissed.

Rule II-8 operates in conjunction with Rule II-1 and delineates the rights of an officer whose reduction in rank has been recommended to the City Manager by the Chief of Police. According to Rule II-8, the officer is to receive a letter from the Chief of Police containing certain information connected with the officer's proposed demotion.

Plaintiffs argue that because the letters dated 13 August 1982 were letters of demotion rather than letters merely recommending demotion, that the warning and notice requirements of Rule II-8 were not observed. Undoubtedly the better route would have been for defendants to comply strictly with the formal requirements of the rules and regulations; however, we cannot say

on the instant facts that the purposes of the Police Rules and Regulations were not served.

The January letters noted that a copy was being sent to the City Manager; the March letters were signed by the City Manager along with the Chief of Police. These documents clearly functioned to provide plaintiffs with notice of problems associated with their job performance and of warning of the possibility of demotion or dismissal. The fact that the City Manager signed the March letters along with the Chief of Police indicates that disciplinary action had been recommended to the Manager in the event job performance did not improve.

On the facts at bar it is manifest that the purposes underlying Rules II-1 and II-8 were fulfilled. Plaintiffs were provided with ample notice and warning of the behavior and offenses that ultimately resulted in their demotions. The plaintiffs received written warning notices in January and again in March 1982; these notices expressly stated that dismissal or demotion would occur if immediate improvement of the listed violations was not forthcoming. In August 1982, each plaintiff received a letter demoting him from police lieutenant to police patrolman. The cumulative effect of the three prehearing communications relating to plaintiffs' demotions, the letters of January, March, and August 1982, sent to each plaintiff respectively, was to satisfy the underlying purpose of Rule II-8, that of providing notice and warning.

We disagree with plaintiffs' position that the particular violations that resulted in their demotions were not set forth with the specificity required by Rule II-8(a)(2). The case cited by plaintiffs in support of their argument, *Employment Security Comm. v. Wells*, 50 N.C. App. 389, 274 S.E. 2d 256 (1981) is distinguishable, in that G.S. 126-35, unlike Rule II-8(a)(2), requires setting forth "the specific acts or omissions that are the reasons for the disciplinary action." In any event, the letters sent to plaintiffs in January and in March did apprise them of the acts and omissions that ultimately caused their demotions.

Any failure on the defendants' part to list the rule number violated is again cured by the fact that the letters fulfilled the underlying purpose of the ordinance, to act as a procedural safeguard to police officers to provide them with notice and warn-

ing before any disciplinary action is taken. We note that Rule II-8(a)(2) only requires "reference" to the rule violated. The March letters in particular set out in sufficient detail the offenses and complaints upon which the demotions were based. It would not be a desirable result to deprive a municipality of the power to demote employees for good cause, which power enables it to best serve its residents, where a deviation from a rule occurred but its underlying purpose was fulfilled. No prejudice resulted to plaintiffs where there was substantial, rather than formal, compliance with the provisions of Rules II-1 and II-8.

We furthermore note that the three-step grievance procedure of City Personnel Policy, Rule IV, section 15.0 was always available to plaintiffs, yet they waited until after they were actually demoted to take advantage of its provisions. The grievance hierarchy of section 15.0 is available to a dissatisfied employee at all times; it was therefore available to plaintiffs between January and August 1982, that is, from the time they received their first warning notices until they received notification of their demotion. There is no evidence in the record that either plaintiff ever requested a predetermination hearing. The march 1982 letters make it clear that some action on the part of the City of Oxford was imminent; plaintiffs never asked for any clarification or explanation from the department or the city until they were actually demoted.

The first response of plaintiffs to their situation was their postdetermination requests for hearings before the City Manager, more than eight months after they each received a "Warning Notice" from the City of Oxford signed by the Chief of Police. Plaintiffs expressed no dissatisfaction with the degree of specificity in the warning notices until they were actually demoted. In light of the above, we hold that any procedural deviations committed by defendants in the predetermination stage of this case resulted in no prejudice to the plaintiffs.

Plaintiffs' next assignments of error are concerned with whether proper procedure was followed at hearings requested by plaintiffs after their demotions and held before the City Manager. These assignments of error can be grouped into two general categories: first, the failure of the trial court to review the "whole record" of the hearings, in particular, the court's refusal to admit

the affidavits of two officers whose testimony was omitted from the transcript of plaintiff Burwell's hearing; second, the plaintiffs contend that the trial court erred in admitting certain documents where counsel for plaintiffs had not been able to examine those documents prior to the hearings. We hold that the trial court committed no error in these evidentiary rulings.

Neither the Police Rules and Regulations nor the City Personnel Policy provide for an automatic right to a postdetermination hearing. However, hearings were awarded the plaintiffs in this action upon their demotions apparently pursuant to step three of Rule IV, section 15.0, the city's grievance procedure for municipal employees. Plaintiffs maintain that these hearings were governed by the provisions of Police Department Rules and Regulations, Rule II-9, Duties of City Manager on Hearing, and argue that the two above-mentioned categories of assignments of error are violations of Rule II-9.

The provisions of Rule II-9 pertain to a hearing before the City Manager requested by an officer "whose . . . reduction in rank has been recommended." Because the hearings in question were actually postdetermination hearings, it does not appear the provisions of Rule II-9 apply to the hearings at bar. However, since the defendants' substantial, as opposed to technical, compliance with Rules II-1 and II-8 has clouded the exact moment at which the demotions were recommended, as opposed to effected, we will treat plaintiffs' assignments of error relating to Rule II-9 procedural violations.

We reject plaintiffs' argument that the whole record rule should be applied to municipal decisions such as these. The whole record rule applies specifically to the Administrative Procedures Act, an act not involved in the instant case. Under this rule, as applied to that Act, a reviewing court "may not consider evidence which in and of itself justifies . . . [a school] Board's result, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn." *Thompson v. Board of Education*, 292 N.C. 406, 410, 233 S.E. 2d 538, 541 (1977) (distinguishing whole record rule from the "any competent evidence" standard of review).

Furthermore, North Carolina has approved a competent evidence standard rather than a whole record standard in con-

struing a city charter provision similar to Rule II-9. *Bratcher v. Winters*, 269 N.C. 636, 153 S.E. 2d 375 (1967). In *Bratcher*, the charter required "notice, written charges, and the hearing of witnesses and the examination of pertinent documents." *Id.* at 642, 153 S.E. 2d at 379. These requirements closely resemble those of the Police Rules and Regulations. The petitioner in *Bratcher* was refused his request to have a stenographic transcript made of his hearing. The trial court reversed the Civil Service Board's order discharging petitioner from the police department, and our Supreme Court affirmed this reversal, stating:

> Court review contemplates findings of fact supported by evidence and conclusions based thereon. An aggrieved party, if [that party] so demands, is entitled to a record which discloses at least the substance of the evidence which he [or she] may challenge as insufficient to support the findings. The record in this case does not meet this minimum requirement.

*Id.* at 642, 153 S.E. 2d at 379.

At bar, transcripts of the hearings of both plaintiffs were made and introduced into evidence. It appears the testimony of three officers testifying at the hearing for plaintiff Burwell was omitted from the transcript by order of the City Manager who presided at the hearing. Affidavits for two of these officers were introduced at the hearing before Judge Hobgood and admitted for the limited purpose of showing that their testimony was omitted from the transcript. Plaintiffs contend that the trial court erred in declining to admit these affidavits for the substance contained therein.

We find no error on this point. As discussed, there is no ordinance or statute requiring the whole record be preserved for review at municipal hearings such as these. There was no showing made at the hearing before Judge Hobgood that the transcript did not contain "at least the substance of the evidence." The "minimum requirement" of competent evidence to support findings of fact and conclusions of law was met at bar. The omission of some testimony does not invalidate the remaining record of the postdetermination hearing. It was therefore not error for the trial court to refuse to admit the affidavits of the two officers

whose testimony was omitted from the transcript of plaintiff Burwell.

As to the assignment of error that plaintiffs were not allowed timely examination of documents, again we hold that no error was committed. Rule II-9 provides only that "upon any hearing" the aggrieved officer shall have the right to examine documents relied upon by the City Manager in reaching a decision. The rule does not provide for examination of documents at any designated interval prior to hearing. The record discloses that the plaintiffs were allowed to examine the documents in question by the time of the hearings and this assignment of error is therefore overruled.

Our holding that no procedural errors were committed by defendants regarding the demotions of plaintiffs effectively disposes of this case. It is therefore unnecessary to reach the constitutional question of whether the Police Rules and Regulations established any due process rights protected by the fourteenth amendment of the United States Constitution, for where a case can be disposed of on appeal without reaching the constitutional issue, it is to be disposed of on the nonconstitutional grounds first. *State v. Blackwell,* 246 N.C. 642, 99 S.E. 2d 867 (1957).

We nonetheless note that no due process rights appear to be involved. In the United States Supreme Court case of *Bishop v. Wood,* 426 U.S. 341, 48 L.Ed. 2d 684, 96 S.Ct. 2074 (1976) the Court held that the position held by petitioner, a police officer, was terminable at will and that he enjoyed no property interest protected by the fourteenth amendment. The Court stated:

> A property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law. The North Carolina Supreme Court has held that an enforceable expectation of continued public employment in that State can exist only if the employer, by statute or contract, has actually granted some form of guarantee. *Still v. Lance,* 279 N.C. 254, 182 S.E. 2d 403 (1971). Whether such a guarantee has been given can be determined only by an examination of the particular statute or ordinance in question.

*Id.* at 344-5, 48 L.Ed. 2d at 690, 96 S.Ct. at 2077-8 (Court also held employee has no liberty interest in a job when the job is terminable at the will of the employer). A reading of the Police Rules and Regulations in conjunction with the City Personnel Policy establishes that plaintiffs had no right to continuing employment in a particular departmental position, nor did they enjoy the guarantee of a hearing either prior or subsequent to a demotion.

In that plaintiffs' procedural rights have not been violated, this Court also declines plaintiffs' request that it exercise any inherent equitable powers to review the substantive grounds for the reinstatement of the plaintiffs.

In summary, we hold that all procedures pertaining to the demotion of a police officer, as such procedures are contained in Police Rules and Regulations and City Personnel Policy were either strictly or substantially complied with in the case at bar. Where the procedures were substantially complied with, the purposes underlying the municipal ordinances were served and no prejudice resulted to either plaintiff. The judgment is affirmed.

Affirmed.

Judges WEBB and JOHNSON concur.

Judge JOHNSON concurring.

I concur but wish to point out that although the defendants may have substantially complied with the requirements of Rules II-1 and II-8, I do not believe that the spirit of the rules requiring the granting of an impartial hearing was followed. Prior to granting the plaintiffs a hearing, the City Manager had already exercised his discretion and demoted plaintiffs in rank. Thereafter, the plaintiffs were required to submit to a hearing before the same City Manager who had previously demoted them and whose decision they were seeking relief from.

Rule IV, Sec. 15.0(3) of the City Personnel Policy, "The Grievance Procedure," provides that the City Manager *may* conduct the hearing himself or he *may* refer the matter to a special grievance committee consisting of three classified city employees; one to be appointed by the City Manager; one fellow employee ap-

pointed by the offended employee; and the third, who will act as chairman, to be appointed by the first two appointees. In this case, City Manager Ragland had considered the conduct of the plaintiffs and exercised his discretion in demoting them. Under these circumstances, upon a request for a hearing to review this action, the better practice would be for the City Manager to exercise his discretion under the City Personnel Policy and refer the hearing to a special grievance committee to preserve the appearance and substance of impartiality.