WAYNE D. HOWELL, PLAINTIFF v. TOWN OF CAROLINA BEACH, NORTH
CAROLINA, A BODY POLITIC AND INCORPORATE, THE TOWN OF CAROLINA
BEACH BOARD OF COMMISSIONERS, DAVID SERRELL, IN HIS INDI-
VIDUAL AND OFFICIAL CAPACITIES, AND HUBERT VINCENT, PATSY R. EFIRD,
AND DOUGLAS BATSON, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES, AND
ROBERT L. DOETSCH AND EDWARD CHINNIS, IN THEIR OFFICIAL CAPACITIES,
DEFENDANTS

No. 915SC552

(Filed 16 June 1992)

1. **Appeal and Error § 418 (NCI4th)— claims not argued in
brief—abandoned**

Claims of intentional infliction of emotional distress, inva-
sion of privacy, and defamation arising from the termination
of plaintiff's employment which were not argued in his brief
were abandoned. N.C.R. App. P. 28(b)(5).

**Am Jur 2d, Appeal and Error §§ 691, 693.**

2. **Master and Servant § 10.2— employment termination—breach
of employment contract—personnel manual not part of contract**

Summary judgment was properly .granted for defendants
on a breach of employment contract claim where plaintiff con-
tended that the town's Personnel Policies and Procedures
Manual took him out of the employment at will category, but
plaintiff did not show that the Manual was expressly included
within his terminable at will contract or that the Manual pro-
vided for discharge only ' for cause.

**Am Jur 2d, Master and Servant §§ 14, 27, 32, 48.3.**

3. **Master and Servant § 10.2 (NCI3d)— wrongful discharge—
exceptions to employment at will not shown—summary judg-
ment for defendants**

. The trial court correctly granted summary judgment for
defendants on a wrongful discharge claim based on failure
to follow procedures in a personnel manual where the manual
was found not to be part of the employment contract, and
plaintiff did not allege facts which fall within the exceptions
to the employment at will doctrine. Plaintiff did not show
that he provided any additional consideration other than his
services and did not allege that his termination was due to

an unlawful purpose or resulted from acts which contravene public policy.

**Am Jur 2d, Master and Servant §§ 14, 27, 32, 48.3.**

4. **Constitutional Law § 105 (NCI4th) — personnel manual — town ordinance — due process**

Summary judgment was improperly granted for defendants on plaintiff's due process claim where plaintiff was discharged as a Carolina Beach policeman and claimed that the Town's failure to follow the grievance procedure in its personnel manual violated his rights under the Fourteenth Amendment to the United States Constitution, Article 1, Section 19 of the North Carolina Constitution, and 42 U.S.C. 1983. Plaintiff's employment was terminable at will and did not in and of itself provide him with a Fourteenth Amendment property right or a vested interest in continued employment, but the Manual, which was also a town ordinance, created the reasonable expectation of continued employment within the meaning of the due process clause. Regardless of whether the town manager had the discretion to terminate plaintiff, he had the responsibility to provide plaintiff with a proper review which could have included a hearing.

**Am Jur 2d, Public Officers and Employees § 261.**

5. **Constitutional Law § 115 (NCI4th) — free speech — memo by police officer regarding malfunctioning weapons — employment terminated**

Summary judgment was improperly granted for defendants in an action in which plaintiff alleged that he was terminated as a police officer because he wrote a memo documenting the poor condition of the police department's firearms and because he campaigned against the mayor and a councilwoman. The issue is one of public concern because members of the public are as likely as officers to be harmed by malfunctioning police firearms and the memo, which plaintiff alleges was written in accordance with his duties as a firearms instructor, was not unreasonable as to form or context. The answer to questions of whether plaintiff was fired due to the memo and whether the Town was justified require the determination of issues of fact.

**Am Jur 2d, Public Officers and Employees § 223.**

APPEAL by plaintiff from summary judgment issued 21 March 1991 by *Judge E. Lynn Johnson* in NEW HANOVER County Superior Court. Heard in the Court of Appeals 17 October 1991.

Plaintiff was first hired as an auxiliary policeman for the town of Carolina Beach, but became a full time officer in 1982. Before beginning each position, plaintiff was required to read the town's "Personnel Policies and Procedures Manual" (Manual). Plaintiff eventually rose to the rank of captain. On 4 January 1988, plaintiff drafted a memorandum to the chief of police which documented the malfunction of some of the police weapons. The chief issued a memorandum to the town manager, dated 8 January 1988, in which he requested funds to purchase new firearms. As justification for the purchase, the chief attached a copy of plaintiff's 4 January memorandum. The chief and town manager met on 8 January 1988, to discuss the issue of new weapons. It was at this meeting that the town manager ordered the chief, who in turn ordered plaintiff, to cancel the firearms order previously placed.

On 4 February 1988, a police training session led to a discussion concerning the frequent jamming and misfiring of the weapons then in use. The officers requested a letter of "protection" be drafted to document the weapons' condition. On this same date, plaintiff drafted a memorandum to the chief of police outlining the inadequacy of a particular revolver which jammed after one or two rounds. Plaintiff concluded the memorandum with the following statement, "I would hope that the Town Manager will realize by this memorandum that if one (1) of our officers is killed in the line of duty and it is found that his firearm will not properly function, the Town Manager will have to suffer the liability." A copy was circulated to all sworn officers.

On 10 February 1988, the town manager called plaintiff and the chief of police into his office. The town manager verbally reprimanded both officers. He refused to reduce the reprimand to writing despite requests from both officers. The only written record of the meeting was contained within a set of shorthand notes taken by the town manager's secretary during the meeting. Plaintiff's written request for a copy of these notes was denied. On 17 February 1988, plaintiff was discharged as a police officer because of

> gross insubordination to the Town Manager as a result of your circulating a memorandum concerning firearms which was

HOWELL v. TOWN OF CAROLINA BEACH

[106 N.C. App. 410 (1992)]

personally demeaning to me as Town Manager and for your profane, rude and abusive language, and insolent behavior when being verbally reprimanded by me on February 10, 1988. In addition you attempted to physically intimidate me at this meeting which is inexcusable.

Subsequent to his termination, on 18 February, plaintiff dispatched a written request for a hearing to the town attorney, to the town manager, to the mayor, and to the town board. The town manager responded that such a hearing was not necessary.

On 13 April 1988, plaintiff filed a civil action against the town, the town board, and the town manager for breach of employment contract, wrongful discharge, violations of free speech and due process, invasion of privacy, defamation and intentional infliction of emotional distress. Plaintiff sought compensatory and punitive damages. Summary judgment on all claims was granted in favor of defendants on 21 March 1991.

*A. A. Canoutas for plaintiff-appellant.*

*Johnson and Lambeth, by Carter T. Lambeth and Maynard M. Brown, for defendants-appellees.*

LEWIS, Judge.

[1] Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. N.C.G.S. § 1A-1, Rule 56; *Bolick v. Townsend Co.*, 94 N.C. App. 650, 381 S.E.2d 175, *disc. rev. denied*, 325 N.C. 545, 385 S.E.2d 495 (1989). "A defendant is entitled to summary judgment only when he can produce a forecast of evidence, which when viewed most favorably to plaintiff would, if offered by plaintiff at trial, without more, compel a directed verdict in defendant's favor, (citation omitted) or if defendant can show through discovery that plaintiff cannot support his claim (citation omitted)." *Coats v. Jones*, 63 N.C. App. 151, 154, 303 S.E.2d 655, 657, *aff'd*, 309 N.C. 815, 309 S.E.2d 253 (1983). Therefore, we must consider each of plaintiff's claims, in the light most favorable to him, to determine if plaintiff's forecast of the evidence revealed any genuine issue of material fact. Before such discussion, we note that in his brief, plaintiff fails to argue his claims of intentional infliction of emotional distress, invasion of privacy, and defamation. Therefore, these claims

are deemed abandoned pursuant to N.C.R. App. P. 28(b)(5) and we decline to address them.

[2] Plaintiff's claims for breach of employment contract and for wrongful discharge rely on his argument that the town's Personnel Policies and Procedures Manual takes him out of the employment-at-will category.

> It is clear in North Carolina that, in the absence of an employment contract for a definite period, both employer and employee are generally free to terminate their association at any time and without any reason. (Citation omitted). This Court has held, however, that in some circumstances employee manuals setting forth reasons and procedures for termination may become part of the employment contract even where an express contract is nonexistent. (Citation omitted).

*Salt v. Applied Analytical, Inc.*, 104 N.C. App. 652, 655, 412 S.E.2d 97, 99 (1991), *disc. rev. denied*, 331 N.C. 119, 415 S.E.2d 200 (1992). Without more, "unilaterally promulgated employment manuals or policies do not become part of the employment contract unless expressly included in it." *Walker v. Westinghouse Elec. Corp.*, 77 N.C. App. 253, 259, 335 S.E.2d 79, 83-84 (1985), *disc. rev. denied*, 315 N.C. 597, 341 S.E.2d 39 (1986) (citation omitted).

In *Salt*, plaintiff filed suit against her employer for both breach of contract and wrongful discharge. Plaintiff-Salt argued that her employer's personnel manual, which she was required to sign to confer receipt, constituted part of her employment contract. By failing to follow the disciplinary procedure outlined in the manual, plaintiff-Salt alleged that the employment contract was breached. The manual classified employees as either probationary or tenured. In this manual, the employer specifically reserved the right to "[t]erminate an employee at any time. Suspend from work any employee . . . [or] [r]eturn to probationary status from tenured status any employee. . . ." *Salt*, 104 N.C. App. at 656, 412 S.E.2d at 99. Plaintiff-Salt could not show that the manual was "expressly included within [her] terminable-at-will contract." *Rosby v. General Baptist State Convention of North Carolina Inc.*, 91 N.C. App. 77, 81, 370 S.E.2d 605, 608, *disc. rev. denied*, 323 N.C. 626, 374 S.E.2d 590 (1988). She also could not show that the manual provided for discharge only "for cause." *Harris v. Duke Power Co.*, 319 N.C. 627, 356 S.E.2d 357 (1987). Therefore, we held that defendant-Applied Analytical's personnel manual could not be considered a

part of plaintiff's employment contract. Summary judgment on the issue of breach of contract was, therefore, properly granted in favor of defendant-Applied Analytical.

In the case at bar, the Town imposed upon itself the requirements set out in its Personnel Policies and Procedures Manual. The parties agree that the Manual provides a grievance procedure: "To provide a means whereby any employee who feels that he/she has been subjected to unfair, discriminatory or abusive treatment may secure a hearing without delay and be assured of a prompt, orderly, and fair response to the grievance or appeal." Dismissals and suspensions are specifically set out as matters within the grievance procedure. The Manual requires a grievance hearing to take place within 25 days of the incident in question. Plaintiff filed the required written grievance request but the record indicates that the town manager never called the required grievance hearing.

In the case at bar, there is no doubt that the Council adopted a "Personnel Policies and Procedures Manual." This was submitted to the plaintiff who signed it, indicating that he had read and understood it. There is no evidence that there was any intent by either party that the offering of the document by the Town and the reading and signing by the plaintiff was to create an employment contract. Plaintiff-Howell has not shown that the Manual was "expressly included within [his] terminable-at-will contract." *Rosby*, 91 N.C. App. at 81, 370 S.E.2d at 608. Nor has he shown that the Manual provided for discharge only "for cause." *Harris v. Duke Power Co.*, 319 N.C. 627, 356 S.E.2d 357 (1987). Hence, the Town's Personnel Policies and Procedures Manual could not be considered as part of plaintiff's employment contract. Consequently, there is no breach of contract and summary judgment in favor of defendants on this issue is affirmed.

[3] Plaintiff-Howell claims that summary judgment on his wrongful discharge claim was improper because the Manual was a lawfully adopted ordinance which provided procedures for discharge which were not followed. Plaintiff also implies that his discharge was due to bad faith by the town manager and three of the town council members. Where, as here, an employment manual was found not to be a part of an employment contract, plaintiff-Salt argued that her employer's personnel manual was an "independent unilateral contract made by defendant[-Applied Analytical] to her." *Salt*, 104

N.C. App. at 658, 412 S.E.2d at 100. Previously, this Court declined "to apply a unilateral contract analysis to the issue of wrongful discharge . . . [because to do so] would, in effect, require us to abandon the 'at-will' doctrine which is the law in this State." *Id.* (citing *Rucker v. First Union Nat. Bank*, 98 N.C. App. 100, 103, 389 S.E.2d 622, 625, *disc. rev. denied*, 326 N.C. 801, 393 S.E.2d 899 (1990) ). However, our Supreme Court has recognized two exceptions to the terminable-at-will doctrine. First, where plaintiff-employee is assured that he cannot be fired except for incompetence and "[w]here the employee gives some special consideration in addition to his services" then the additional consideration removes "plaintiff's employment contract from the terminable-at-will rule. . . . " *Sides v. Duke University*, 74 N.C. App. 331, 345, 328 S.E.2d 818, 828, *disc. rev. denied*, 314 N.C. 331, 333 S.E.2d 490 and *disc. rev. denied*, 314 N.C. 331, 335 S.E.2d 13 (1985) (citation omitted). Second, where an employment contract is terminated "for an unlawful reason or purpose that contravenes public policy," the contract is removed from within the terminable-at-will doctrine. *Coman v. Thomas Mfg. Co., Inc.*, 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989) (citation omitted), *see Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 416 S.E.2d 166 (1992). Public policy was defined as "the principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." *Coman*, 325 N.C. at 175 n.2, 381 S.E.2d at 447 n.2. (citation omitted). In dicta, the *Coman* Court stated, "[b]ad faith conduct should not be tolerated in employment relations, just as it is not accepted in other commercial relationships." *Id.*, at 177, 381 S.E.2d at 448; *see also Amos*. "[T]here is no independent tort action for wrongful discharge of an at-will employee based solely on allegations of discharge in bad faith." *Salt*, 104 N.C. App. at 662, 412 S.E.2d at 103; *see also Amos*.

In the case at bar, plaintiff-Howell has not alleged facts which fall within the exceptions to the "at-will" doctrine. Plaintiff has not shown that he provided any "additional consideration" other than his services. He has not alleged that his termination was due to an unlawful purpose or resulted from acts which contravene public policy. Further, plaintiff is unable to rely upon the theory of an "independent unilateral contract" or upon termination due to bad faith as neither of these theories is recognized in wrongful discharge actions. Though the manual set out grievance procedures it was not a part of plaintiff's employment contract. As in *Salt*,

"plaintiff's employment relationship with defendant [Town] was not 'governed' by the policy manual given to [him] . . . ." *Salt*, 104 N.C. App. at 664, 412 S.E.2d at 104. Therefore, defendants' failure to follow the grievance procedures does not constitute wrongful discharge. Summary judgment on this issue was properly granted.

[4]   Plaintiff-Howell claims the Town's failure to follow the Manual's grievance procedure violated his due process rights under the Fourteenth Amendment and Article 1, Section 19 of the North Carolina Constitution and constituted a violation of 42 U.S.C. § 1983. The requirement of "procedural due process applies only to the deprivation of interests encompassed within the Fourteenth Amendment's protection of liberty and property. . . ." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 33 L.Ed. 2d 548, 92 S.Ct. 2701 (1972). We acknowledge that in the case before us, plaintiff's employment, which was terminable at will, in and of itself did not provide him with a Fourteenth Amendment property right or a vested interest in continued employment. *See Burwell v. Griffin*, 67 N.C. App. 198, 209, 312 S.E.2d 917, 924, *disc. rev. denied*, 311 N.C. 303, 317 S.E.2d 678 (1984). However, an enforceable interest in continued employment can be "created by ordinance, or by an implied contract." *Id.* (citing *Bishop v. Wood*, 426 U.S. 341, 344-45, 48 L.Ed. 2d 684, 690, 96 S.Ct. 2074, 2077-78 (1976) ). Here, the Manual, which was also a town ordinance, created the reasonable expectation of continued employment within the meaning of the due process clause. The Town's ordinance, in effect, is comparable to rights given State employees pursuant to N.C.G.S. § 126-35 (1991). That statutory provision delineates certain procedures relating to grievances and disciplinary actions with respect to State employees. Cases decided pursuant to N.C.G.S. § 126-35 have held the statute to create a reasonable expectation of employment and a property interest within the meaning of the Due Process Clause. *See i.e., Leiphart v. North Carolina School of the Arts*, 80 N.C. App. 339, 342 S.E.2d 914, *cert. denied*, 318 N.C. 507, 349 S.E.2d 862 (1986); *Faulkner v. North Carolina Dept. of Corrections*, 428 F. Supp. 100 (W.D.N.C. 1977).

In the present case, the facts do not suggest, nor do defendants argue that the Manual is inapplicable to plaintiff. The Manual was adopted as a town ordinance on 13 February 1979 and became effective 14 February 1979. The scope of the Manual covers "all employees of the Town." A permanent employee includes "[a]n employee who has successfully completed his or her probationary

HOWELL v. TOWN OF CAROLINA BEACH

[106 N.C. App. 410 (1992)]

period." A probationary employee is defined as "[a]ny employee who has not successfully completed the required six (6) months probationary period immediately after being hired," except for police officers who must complete twelve months as a probationary employee. Plaintiff was sworn in as a police officer in the Town of Carolina Beach on 25 February 1982 and completed the requisite twelve (12) month probationary period. The Manual's provisions therefore apply directly to plaintiff.

Questions remain as to whether plaintiff received the process he was due. With respect to employee grievances, the personnel policy outlined detailed procedures, indicating:

> It is the policy of the Town that all employees shall be treated fairly and consistently in all matters related to their employment. When an employee feels that he/she has not been so treated, he/she shall have the right to present a grievance or appeal free from interference, restraint, coercion, discrimination, or reprisal.

The Manual delineated specific procedures using a three-step process. Step One included an oral appeal by the employee to his or her immediate supervisor. Step Two required the employee to put the grievance into writing no later than ten (10) days following the incident leading to the grievance. Step Three of the process indicated, "[t]he Town Manager shall personally conduct, or at his discretion, direct a Grievance Committee to conduct a grievance hearing not later than twenty-five (25) work days after the date of the incident or action which caused the grievance." As for the personnel policies associated with disciplinary procedure, the Manual indicated that a single act of insubordination "[m]ay result in discharge after review and approval by the Town Manager; file to be documented as necessary."

The facts in this case demonstrate that following plaintiff's circulation of the firearm memorandum, the town manager verbally reprimanded him on 10 February 1988. At that time, plaintiff orally requested the town manager to reduce the reprimand to writing, but he refused. Later the same day, plaintiff submitted a written request to the town manager asking for a written reprimand which request was again refused. In a letter dated 17 February 1988, the town manager dismissed plaintiff. Defendants argue that plaintiff received all the process that he was due and any hearing before the town manager "would have been an unnecessary exercise in

**HOWELL v. TOWN OF CAROLINA BEACH**

[106 N.C. App. 410 (1992)]

futility on the part of the Town." However, based on these facts, it is evident plaintiff was not afforded the proper procedure pursuant to either the grievance policy or the disciplinary policy. Regardless of whether the town manager had the discretion to terminate plaintiff, he had the responsibility to provide plaintiff with a proper review which could have included a hearing. Consequently, summary judgment as to plaintiff's due process claim was improperly granted and is now reversed.

[5] Plaintiff's last allegation of error concerns his claim that defendants' action violated his First Amendment right to free speech. Defendants fired plaintiff for insubordination. Defendants claim that plaintiff's memorandum containing the language to the effect that the town manager would be liable for deaths in the line of duty should a policeman's weapon malfunction due to its age or its present state of disrepair was insubordinate behavior. During the verbal reprimand, defendants claim plaintiff became verbally abusive which was also insubordination. Plaintiff claims that he had a First Amendment right to draft the memorandum documenting the poor condition of the police department's firearms. Plaintiff insinuates that he was fired for campaigning against the mayor and a councilwoman which he claims also violates his right to free speech. The seminal case in this area is *Connick v. Myers*, 461 U.S. 138, 75 L.Ed. 2d 708, 103 S.Ct. 1684 (1983). Normally, government has "wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Id.* at 146, 75 L.Ed. 2d at 719. This broad discretion is curtailed when a decision to fire a government employee is made based upon an employee's expression on an issue of public concern: one of political, social or other concern to the community. *Id.* "[A] public employee does not relinquish First Amendment rights to comment on matters of public [concern] by virtue of government employment." *Id.* at 140, 75 L.Ed. 2d at 715 (citation omitted). The test for determining whether plaintiff's expression was one of "legitimate public concern" is whether the matter is one in "which free and open debate is vital to informed decisionmaking by the electorate." *Id.* at 145, 75 L.Ed. 2d at 719. The reviewing court must examine the employee's speech in light of the "content, form [manner, time, place], and context of a given statement, as revealed by the whole record[ ]" to determine whether it is a matter of public concern. *Id.* at 147-48, 75 L.Ed. 2d at 720.

If it is determined that the employee's expression does touch upon a matter of public concern and that it was one of the reasons for terminating this employee, then the court must determine whether the government employer was justified in discharging the employee. The government's burden of proving justification "varies depending upon the nature of the employee's expression." *Id.* at 150, 75 L.Ed. 2d at 722. The employee's constitutional rights are balanced against the "government's interest in effective and efficient fulfillment of its responsibilities to the public." *Id.* The essential question is whether plaintiff's expression impedes his or her ability to fulfill the responsibilities of the job. However, "[w]hen close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." *Id.* at 151-52, 75 L.Ed. 2d at 723. Employers do not have to let the situation degenerate into a hostile working environment before taking action. The First Amendment does not require an employer to "tolerate action which he reasonably believe[s] would disrupt the office, undermine his authority, and destroy close working relationships." *Id.* at 154, 75 L.Ed. 2d at 724. The more substantially the employee's speech touches or involves a matter of public concern, the stronger the showing and the heavier the burden is for the State to prove justification for terminating the plaintiff. *Id.* at 152, 75 L.Ed. 2d at 723.

Plaintiff-Howell alleges that he was fired because of the memorandum he authored and because of his political activities. Our first determination must be whether the memorandum covers an issue of public concern. The question is whether this memorandum dealt with an issue upon which "free and open debate is vital to informed decisionmaking by the electorate." *Id.* at 145, 75 L.Ed. 2d at 719. Because members of the public are as likely as officers to be harmed by malfunctioning police firearms, we find that this issue is one of public concern.

Further, we evaluate the content, manner, time, place, and context in which the issue arose. Plaintiff alleges that the memorandum was written in accordance with his duties as a firearms instructor. We do not find the memorandum to be unreasonable as to form or context.

As the memorandum regards a matter of public concern, there remain two questions: whether plaintiff was fired due to the memorandum and, if so, whether the Town was so justified. The

answer to these two questions require the determination of several issues of fact. Therefore, summary judgment on this issue was not properly granted. Plaintiff's allegations and the depositions of the council members indicate that there is a genuine issue of material fact as to whether plaintiff's political activities may have contributed to his termination. Plaintiff's forecast of the evidence presents a colorable claim that a constitutionally protected "liberty interest" (freedom of speech) encompassed by the Due Process Clause of the Fourteenth Amendment has been violated.

Summary judgment as to the First Amendment claim and the Due Process claim is reversed. Summary judgment as to the other claims is affirmed.

Reversed in part.

Affirmed in part.

Judges ARNOLD and COZORT concur.