ROGER D. WOODS, JR., PLAINTIFF-APPELLANT v. CITY OF WILMINGTON, NORTH CAROLINA, DEFENDANT-APPELLEE

No. COA96-429

(Filed 4 February 1997)

1. **Municipal Corporations § 378 (NCI4th)— city employee— nondisciplinary suspension—continued employment—no city code right—termination—procedural due process not required**

A city code did not vest an at-will employee placed on a nondisciplinary suspension because of a pending criminal charge against him with a cognizable property interest, protected by the "law of the land" clause of the North Carolina Constitution, in continued employment with the city pending resolution of the criminal charge so as to require that the employee be afforded procedural due process in order for the city to terminate him. N.C. Const. art. I, § 19.

**Am Jur 2d, Municipal Corporations, Counties, & Other Political Subdivisions §§ 309 et seq.**

2. **Municipal Corporations § 378 (NCI4th)— city employee— nondisciplinary suspension—statements by superiors— continued employment—no property interest created**

Statements made to a city employee by the city engineer and the city personnel director concerning his nondisciplinary suspension because of a pending criminal charge against him did not give the employee a cognizable property interest in continued

**WOODS v. CITY OF WILMINGTON**

[125 N.C. App. 226 (1997)]

employment protected the "law of the land" clause of the North Carolina Constitution.

### Am Jur 2d, Municipal Corporations, Counties, & Other Political Subdivisions §§ 309 et seq.

Appeal by plaintiff from judgment entered 29 February 1996 by Judge James E. Ragan, III, in New Hanover County Superior Court. Heard in the Court of Appeals 8 January 1997.

*Virginia R. Hager for plaintiff-appellant.*

*Michael B. Brough & Associates, by William C. Morgan, Jr., for defendant-appellee.*

MARTIN, Mark D., Judge.

Plaintiff Roger Woods appeals from the trial court's grant of summary judgment to defendant City of Wilmington on plaintiff's claims for violation of the North Carolina Constitution.

On 11 August 1986 plaintiff was hired by defendant as Survey Party Chief in the City Engineering Department. Plaintiff was subsequently promoted to the position of Engineer I. In at least three separate performance reviews—15 June 1990, 13 December 1990, and 24 June 1991—Hugh Caldwell, Jr., (Caldwell) plaintiff's supervisor, rated plaintiff's job performance as "above expected." The December 1989 performance review indicated plaintiff was performing at the "expected" level.

In April 1991 plaintiff began an extra-marital relationship with Teresa Strother (Strother), a co-worker. At that time plaintiff and Strother were still married to, and living with, their respective spouses. On 22 April 1991 plaintiff revealed his relationship with Strother to Caldwell. Two days later Howard Wood (Wood), City Engineer, requested a meeting with plaintiff and Strother. At this meeting Wood, at least in general terms, conveyed that an employee's personal life must not interfere with the discharge of job-related duties. By the end of May 1991, plaintiff and Strother had left their respective spouses and moved in together.

On 25 June 1991 Wood met with plaintiff to discuss a recent phone call from plaintiff's now estranged wife. On 2 July 1991 Wood again met with plaintiff concerning several phone calls that Phillip Strother, Strother's estranged husband, placed to Wood, to the city

manager, and to the mayor. On 15 July 1991 Wood informed plaintiff and Strother they must take the necessary steps to dissuade further phone calls from either ex-spouse.

On 23 September 1991, at approximately 5:21 p.m., plaintiff, driving Strother's car, entered the Phar-Mor parking lot on South College Street in Wilmington. Phillip Strother attacked plaintiff as he was exiting the car. During the ensuing encounter, plaintiff retrieved a pistol from the glove compartment and shot Phillip Strother. Plaintiff was arrested and charged with assault with a deadly weapon with intent to kill inflicting serious injury. Plaintiff was released on $25,000 bond.

On 25 September 1991 Wood notified plaintiff that he was being placed on non-disciplinary suspension, without pay, pursuant to Section 8-166 of the Wilmington City Code (Wilmington Code). Later that day, plaintiff and Wood met with Joe Dixon, City Personnel Officer, to discuss further plaintiff's suspension, specifically the potential effect on plaintiff's insurance and other benefits.

By letter dated 17 February 1992, Wood notified plaintiff he was being terminated effective 1 March 1992, pursuant to Wilmington Code § 8-165. The 17 February letter indicated plaintiff was being terminated because "of the nature of the pending criminal charges, the situation that led to the charges, the disruption that these developments have caused in the work in the Engineering Department, and the potential for further disruptions . . . ." Defendant admits there was:

> no [specific] act or conduct of Plaintiff that occurred between September 25, 1991 and February 17, 1992 [which justified the immediate suspension and subsequent termination of plaintiff]. The act that justified the termination of Plaintiff's employment was his shooting of Phillip Strother on September 23, 1991, and the circumstances leading up to and following that incident.

> Plaintiff's supervisors were concerned about the possibility of another confrontation occurring on City premises, perhaps resulting in injury to innocent persons. In view of the potential danger that Plaintiff's presence in the work place presented, it was necessary to remove him from the work place immediately and indefinitely through non-disciplinary suspension.

> Plaintiff's continued employment was never dependent on the outcome of his criminal trial.

Further, Wood testified he initiated plaintiff's termination because he "was concerned for the safety of [his] employees, and the safety of anyone else that may come into contact with this situation, whether it be a private citizen on a project or in the office or otherwise." Plaintiff appealed his termination to City Manager William Farris (Farris). By letter dated 16 April 1992, Farris, without a hearing on the matter, "sustained the decision to terminate [plaintiff's] employment with [defendant]."

On 13 May 1992 plaintiff's criminal trial began in New Hanover County Superior Court. On 14 May 1992, at the close of the State's evidence, the trial court dismissed the criminal charges against plaintiff. Plaintiff's attorney subsequently contacted Thomas Pollard (Pollard), City Attorney, concerning the possibility of re-instating plaintiff. After consulting with Farris and Wood, Pollard advised plaintiff, through his attorney, that defendant was not willing to re-hire plaintiff.

On 10 August 1994 plaintiff instituted the present action claiming his termination infringed on rights guaranteed by Article I, Sections 19 (law of the land clause), 24 (right to jury trial), and 30 (right to bear arms) of the North Carolina Constitution. On 29 December 1995 defendant made a motion for summary judgment on plaintiff's claim for violation of his due process rights secured under Article I, Section 19[1] which the trial court subsequently granted.

On appeal, plaintiff contends the trial court erred by granting defendant's motion for summary judgment because plaintiff's termination violated the "law of the land" clause, Article I, Section 19 of the North Carolina Constitution.

Summary judgment is only appropriate when, on the basis of the materials before the trial court, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56 (1990).

It is undisputed that plaintiff was an employee-at-will and, thus, could generally be discharged for arbitrary, irrational, indifferent, or illogical reasons without any legal recourse. *See Sides v. Duke University*, 74 N.C. App. 331, 342, 328 S.E.2d 818, 826, *disc. review denied*, 314 N.C. 331, 333 S.E.2d 490 (1985). Further, under the

---

1. Although not contained in the record on appeal, plaintiff states that his claims for violation of Article I, Sections 24 and 30 were dismissed by the trial court pursuant to N.C.R. Civ. P. 12. Because plaintiff does not assign error to this ruling, we do not consider it on appeal. N.C.R. App. P. 10(a).

present facts and circumstances, plaintiff's termination does not fall within the two narrow, albeit well-recognized, exceptions to the at-will doctrine. *See Sides*, 74 N.C. App. at 339-342, 328 S.E.2d at 824-826; *Howell v. Town of Carolina Beach*, 106 N.C. App. 410, 415-417, 417 S.E.2d 277, 280-281 (1992). Accordingly, defendant could lawfully terminate plaintiff unless circumstances existed which elevated, even if only temporarily, plaintiff's employment above mere at-will status.

Toward that end, plaintiff argues that, at the time he was discharged, plaintiff had a property interest, protected by the "law of the land" clause, in continued employment with defendant. Plaintiff therefore concludes that his discharge without a hearing, and before the conclusion of his criminal trial, violated the procedural due process guaranteed by the North Carolina Constitution.

Admittedly, an at-will employee may gain a property interest in continued employment which is protected by Article I, Section 19 of the North Carolina Constitution—the "law of the land" clause. *See Howell*, 106 N.C. App. at 415, 417 S.E.2d at 280; *Kearney v. County of Durham*, 99 N.C. App. 349, 351, 393 S.E.2d 129, 130 (1990). The "law of the land" clause is considered "synonymous" with the Fourteenth Amendment to the United States Constitution. *State v. Smith*, 90 N.C. App. 161, 163, 368 S.E.2d 33, 35 (1988), *aff'd*, 323 N.C. 703, 374 S.E.2d 866, *cert. denied*, 490 U.S. 1100, 104 L. Ed. 2d 1007 (1989). Accordingly, decisions of the United States Supreme Court concerning federal due process are highly persuasive aids in interpreting the scope of, and protection accorded by, the "law of the land" clause. *See id.*

"The requirement of procedural due process appl[ies] only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569, 33 L. Ed. 2d 548, 556 (1972). Although "liberty" and "property" should be accorded broad and expansive meanings, *id.* at 571-572, 33 L. Ed. 2d at 557-558, plaintiff's at-will employment does not, in and of itself, create a cognizable property interest in continued employment, *Howell*, 106 N.C. App. at 417, 417 S.E.2d at 281. "A property interest in employment can, [however], be created by ordinance, or by an implied contract." *Burwell v. Griffin*, 67 N.C. App. 198, 209, 312 S.E.2d 917, 924 (*quoting Bishop v. Wood*, 426 U.S. 341, 344, 48 L. Ed. 2d 684, 690 (1976)), *appeal dismissed and disc. review denied*, 311 N.C. 303, 317 S.E.2d 678 (1984).

Plaintiff, here, asserts that he secured a property interest in continued employment through the provisions of the Wilmington Code or, in the alternative, assurances made by his superiors.

## A.

[1] We first consider plaintiff's allegation the Wilmington Code accorded him a cognizable property interest in continued employment.

Notably, plaintiff's argument, taken to its logical conclusion, presents an apparent anomaly—an employee properly placed on non-disciplinary suspension under section 8-166 for alleged improper behavior secures a constitutionally protected property interest in continued employment when his or her co-workers remain mere at-will employees and, thus, subject to termination at defendant's whim. In support of his proposition, plaintiff relies heavily on (1) this Court's decision in *Howell v. Town of Carolina Beach,* 106 N.C. App. 410, 417 S.E.2d 277 (1992), and (2) sections 8-156(b) and 8-166 of the Wilmington Code.

## 1.

In *Howell,* plaintiff, a police captain, was discharged after distributing a somewhat inflammatory memorandum to the chief of police and all sworn officers. *Howell,* 106 N.C. App. at 412, 417 S.E.2d at 278. Eight days after his termination, plaintiff dispatched a written request for hearing to the town attorney, town manager, mayor, and the town board. *Id.* at 413, 417 S.E.2d at 279. It was undisputed that, prior to plaintiff's dismissal, defendant adopted a Personnel Policies and Procedures Manual creating a grievance procedure "[t]o provide a means whereby any employee who feels that he/she has been subjected to unfair . . . treatment may secure a hearing without delay . . . ." *Id.* at 415, 417 S.E.2d at 280. In fact, the personnel manual expressly required a hearing to take place within twenty-five days of the incident leading to the employee's dismissal. *Id.*

In the present case, the Wilmington Code does not expressly require the city manager to grant all discharged employees a hearing. Rather, "[t]he city manager, at his discretion, may or may not hear the employee but will render a decision to the aggrieved employee within the ten (10) working days following receipt of the grievance . . . ." Wilmington City Code § 8-164 (1983). Therefore, despite plaintiff's protestations to the contrary, this Court's decision in *Howell* does not necessitate reversal of the trial court's grant of summary judgment.

2.

The express policy behind the Wilmington Code is to ensure the city "act[s] with integrity and justice toward each employee, and each employee . . . compl[ies] with instructions, policies, . . . and standards of personal conduct necessary for satisfactory completion of the job." Wilmington City Code § 8-156(b) (1983). When, as here, an employee is involved in a criminal proceeding, section 8-166 provides:

> During the investigation, hearing, or trial of an employee on any criminal charge or during the course of any civil action involving an employee, the department head may suspend the employee without pay for the duration of the proceeding as a nondisciplinary action. Full recovery of pay and benefits for the period of nondisciplinary suspension is authorized if the suspension is terminated with full reinstatement of the employee.

Wilmington City Code § 8-166 (1983) (emphasis added).

Section 8-166 does not, on its face, elevate a suspended employee above at-will status or limit defendant's right to terminate an employee on non-disciplinary suspension pursuant to section 8-165 (immediate termination). Further, by listing the stages of a criminal proceeding—investigation, hearing, and trial—in the disjunctive, section 8-166 implies an employee may be removed from suspended status at any stage of the criminal proceeding. Simply put, the plain language of section 8-166 does not expressly foreclose defendant from making personnel decisions, *e.g.*, termination, prior to the resolution of the criminal proceedings which initially necessitated that employee's suspension. Therefore, section 8-166 does not vest plaintiff, or any other employee suspended under section 8-166, with a cognizable property interest in continued employment pending resolution of the criminal proceeding instituted against that employee.

B.

[2] We next consider plaintiff's assertion that statements made by his superiors concerning his non-disciplinary suspension imbued him with a reasonable expectation he would not be terminated, if at all, until the conclusion of his criminal trial.

The United States Supreme Court has stated that a "person's interest in a benefit is a 'property' interest for due process purposes if there are . . . mutually explicit understandings that support his

claim of entitlement to the benefit . . . ." *Perry v. Sindermann*, 408 U.S. 593, 601, 33 L. Ed. 2d 570, 580 (1972). *See also Burwell*, 67 N.C. App. at 209, 312 S.E.2d at 924 (property interest can be created by implied contract). Statements by a superior, however, "cannot form the basis of a 'mutually explicit understanding' unless th[ose] official[s] [have] the authority to make the representations." *Fittshur v. Village of Menomonee Falls*, 31 F.3d 1401, 1408 (7th Cir. 1994). In fact, the officials must possess the actual authority to alter the employment relationship because a municipality cannot be liable for an *ultra vires* representation by one city employee to a subordinate. *Id. See also Moody v. Transylvania County*, 271 N.C. 384, 388, 156 S.E.2d 716, 719 (1967) (*ultra vires* contract is wholly void as against a municipality); *Pritchard v. Elizabeth City*, 81 N.C. App. 543, 553, 344 S.E.2d 821, 827 ("municipality cannot be [] liable for breach of an express contract . . . when the official making the contract has exceeded his or her authority by entering into such a contract."), *disc. review denied*, 318 N.C. 417, 349 S.E.2d 598 (1986).

In the present case, plaintiff contends that certain statements made by Wood and Joe Dixon, Director of Personnel, evidence an understanding that plaintiff's employment status was not merely at-will during his non-disciplinary suspension. Even assuming that Wood and Dixon made such statements, the Wilmington Code clearly indicates Wood and Dixon did not have the actual authority to alter plaintiff's employment relationship with defendant.

First, as to Wood, the Wilmington Code delegates "[t]he authority to suspend, remove and take other actions . . ." to the head of engineering. Wilmington City Code § 8-157 (1983). Second, Dixon, as Personnel Director, is responsible for reviewing and recommending "to the city manager policies and revisions for pay, classification and personnel administration. Under the direction of the city manager, the personnel director shall develop and administer such procedures as are necessary to assure fairness and honesty in . . . maintaining an effective and responsible work force." Wilmington City Code § 8-7 (1983). Notably, however, the city council is vested with the sole authority "to establish a . . . system of personnel administration . . . [and] personnel ordinances, including [] position classification . . . ." Wilmington City Code § 8-5 (1983). Although the city council and, at least arguably, the city manager, *see* Wilmington City Code § 8-6 (1983), *Fittshur*, 31 F.3d at 1408, have the authority to alter plaintiff's employment-at-will status, it is readily apparent neither Wood nor Dixon was vested with the requisite authority. Therefore, under

*Fittshur,* *Moody,* and *Pritchard,* neither Dixon nor Wood could legally alter plaintiff's at-will employment status with defendant.

Plaintiff nonetheless argues that section 8-157 specifically delegates the authority to alter his employment status to department heads, like Dixon and Wood. To the contrary, section 8-157 delegates only "[t]he authority to suspend, remove and take other actions outlined in this chapter . . . ." Wilmington City Code § 8-157 (1983). Because the authority to alter an employee's at-will status is not among the "other actions" expressly delineated in the remaining pertinent provisions of the Wilmington Code, plaintiff's argument must fail.

Accordingly, we conclude plaintiff did not possess a cognizable property interest in continued employment protected by the North Carolina Constitution.

C.

Even though plaintiff did not possess a constitutionally protected property interest in continued employment, plaintiff must receive, at a minimum, the process mandated by the Wilmington Code. *Burwell,* 67 N.C. App. at 209-210, 312 S.E.2d at 924. Careful review of the present record indicates that plaintiff was terminated in accordance with the procedures set forth in Wilmington Code § 8-165.

Accordingly, as plaintiff is an employee-at-will, defendant's actions do not implicate Article I, Section 19, of the North Carolina Constitution and defendant complied with its own internal termination procedures, the trial court did not err in granting summary judgment to defendant.

Affirmed.

Judges LEWIS and WALKER concur.