BENJAMIN F. McCALLUM, PLAINTIFF-APPELLEE v. NORTH CAROLINA COOPERATIVE EXTENSION SERVICE OF N.C. CAROLINA STATE UNIVERSITY AND PATRICIA BARBER IN HER OFFICIAL CAPACITY, DEFENDANTS-APPELLANTS

No. COA99-1434

(Filed 6 February 2001)

1. **Appeal and Error— appealability—denial of summary judgment—collateral estoppel—substantial right**

The denial of a motion for summary judgment based on collateral estoppel may affect a substantial right and defendants' appeal, although interlocutory, was properly before the Court of Appeals.

2. **Collateral Estoppel and Res Judicata— collateral estoppel—state constitutional claim—issues previously litigated in federal court**

Collateral estoppel may prevent the re-litigation of issues that are necessary to the decision of a North Carolina constitutional claim and that have been previously decided in federal court. Holding that state courts are never barred from hearing state constitutional claims, even when such issues have been previously litigated in the federal courts, would violate the underlying principle of judicial economy that precipitated the creation of the collateral estoppel and res judicata doctrines.

3. **Collateral Estoppel and Res Judicata— collateral estoppel—employment termination—discriminatory intent and improper motivation—previously litigated in federal court**

The trial court erred when it refused to grant defendants' motion for summary judgment based on collateral estoppel of plaintiff's claims of racial discrimination, equal protection violations, and retaliatory discharge. The issues of defendants' discriminatory intent and improper motivation were tried in federal

court after full discovery, with resolution of those issues being material and necessary to the judgment in that court.

**4. Public Officers and Employees— state employee—termination—due process—employee at will**

An Agricultural Extension Agent was barred from bringing a due process claim arising from his discharge because he was an employee-at-will with no cognizable property right in his employment. A letter appointing defendant County Extension Director upon which plaintiff relied to contend that there were mutually explicit understandings of continued employment revealed no understanding regarding plaintiff's status as an Agricultural Extension Agent, a document concerning tenure for the County Extension Director merely expressed the possibility of continued employment as an agent if plaintiff failed to perform satisfactorily in the Director position, and, although the plaintiff's termination was not first discussed with the Richmond County Board of Commissioners, as had been agreed in a memorandum of understanding between the Board and defendants, the Board's role did not extend to actual authority over the extension service's ability to discharge employees.

Appeal by defendants from order entered 13 July 1999 by Judge Michael E. Beale in Richmond County Superior Court. Heard in the Court of Appeals 21 September 2000.

In August 1995, defendant North Carolina Cooperative Extension Service (NCCES) of North Carolina State University discharged plaintiff Benjamin F. McCallum from his employment as an Agricultural Extension Agent. In April 1997, plaintiff filed a complaint in Richmond County Superior Court against NCCES and the District Extension Director for Richmond County, alleging retaliatory discharge and equal protection violations under the United States Constitution, race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, and a violation of his rights under Article I, §§ 1, 12, 14, and 19 of the North Carolina Constitution. Defendants removed the action to the United States District Court for the Middle District of North Carolina. After the completion of discovery, defendants moved for summary judgment. On 4 January 1999, the United States District Court granted defendants' motion for summary judgment on all claims based on violations of federal law and dismissed without prejudice the claims based on alleged violations of the North Carolina Constitution. In granting summary judgment, the

federal court stated that plaintiff had failed to show any discriminatory intent by NCCES. Further, the federal court found that plaintiff could not show a causal connection between any constitutionally protected activities and his discharge from employment.

In February 1999, plaintiff filed a second complaint in Richmond County Superior Court, in which he again alleged that he was discharged from employment in violation of the North Carolina Constitution. Defendants moved for summary judgment, contending that plaintiff's claims for violation of equal protection rights, racial discrimination, and retaliatory discharge were barred under the doctrine of collateral estoppel because of the federal court adjudications, and that plaintiff's due process claim was barred because plaintiff was an at-will employee with no property right in his employment. Defendants further contended that, if plaintiff were subject to the State Personnel Act, then he had an alternate remedy under that Act which he had not exhausted.

On 13 July 1999, the trial court denied defendants' motion for summary judgment, and they appealed to this Court.

*McSurely & Osment, by Alan McSurely and Ashley Osment, for plaintiff appellee.*

*Attorney General Michael F. Easley, by Assistant Attorney General Celia Grasty Lata, for defendant appellants.*

HORTON, Judge.

[1] The denial of summary judgment is not a final judgment, but rather is interlocutory in nature. We do not review interlocutory orders as a matter of course. *Veazey v. Durham,* 231 N.C. 357, 361-62, 57 S.E.2d 377, 381, *reh'g denied,* 232 N.C. 744, 59 S.E.2d 429 (1950). If, however, "the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review[,]" we may review the appeal under N.C. Gen. Stat. §§ 1-277(a) and 7A-27(d)(1). *N.C. Dept. of Transportation v. Page,* 119 N.C. App. 730, 734, 460 S.E.2d 332, 334 (1995). The moving party must show that the affected right is a substantial one, and that deprivation of that right, if not corrected before appeal from final judgment, will potentially injure the moving party. *Goldston v. American Motors Corp.,* 326 N.C. 723, 726, 392 S.E.2d 735, 736 (1990). Whether a substantial right is affected is determined on a case-by-case basis. *Bernick v. Jurden,* 306 N.C. 435, 439, 293 S.E.2d 405, 408 (1982).

**McCALLUM v. N.C. COOP. EXTENSION SERV.**

[142 N.C. App. 48 (2001)]

We have ruled that "appeals raising issues of governmental or sovereign immunity affect a substantial right sufficient to warrant immediate appellate review." *Price v. Davis*, 132 N.C. App. 556, 558-59, 512 S.E.2d 783, 785 (1999); *Derwort v. Polk County*, 129 N.C. App. 789, 790, 501 S.E.2d 379, 380 (1998). As a state agency, NCCES is shielded by sovereign immunity from suits based on torts committed while performing a governmental function. Therefore, to the extent defendants' appeal is based on an affirmative defense of immunity, this appeal is properly before us.

Further, our Supreme Court has ruled that the denial of a motion for summary judgment based on the defense of *res judicata* (or claim preclusion) is immediately appealable. *Bockweg v. Anderson*, 333 N.C. 486, 491, 428 S.E.2d 157, 161 (1993). Under the doctrine of *res judicata*, a final judgment on the merits in a prior action precludes a second suit involving the same claim between the same parties. *Thomas M. McInnis & Assoc., Inc. v. Hall*, 318 N.C. 421, 428, 349 S.E.2d 552, 556 (1986). Denial of a summary judgment motion based on *res judicata* raises the possibility that a successful defendant will twice have to defend against the same claim by the same plaintiff, in frustration of the underlying principles of claim preclusion. *Bockweg*, 333 N.C. at 491, 428 S.E.2d at 161. Thus, the denial of summary judgment based on the defense of *res judicata* can affect a substantial right and may be immediately appealed. *Id.*

Like *res judicata*, collateral estoppel (issue preclusion) is " 'designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally.' " *King v. Grindstaff*, 284 N.C. 348, 356, 200 S.E.2d 799, 805 (1973) (quoting *Commissioner v. Sunnen*, 333 U.S. 591, 599, 92 L. Ed. 898, 907 (1948)). Under collateral estoppel, parties are precluded from retrying fully litigated issues that were decided in any prior determination, even where the claims asserted are not the same. *McInnis*, 318 N.C. at 428, 349 S.E.2d at 557. The denial of summary judgment based on collateral estoppel, like *res judicata*, may expose a successful defendant to repetitious and unnecessary lawsuits. Accordingly, we hold that the denial of a motion for summary judgment based on the defense of collateral estoppel may affect a substantial right, and that defendants' appeal, although interlocutory, is properly before us.

Summary judgment is appropriate when there is no genuine issue as to any material fact, and a party is entitled to a judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c) (1999). Defendants

assert, on two separate grounds, that they are entitled to such judgment. Defendants first contend that issues dispositive of plaintiff's claims of racial discrimination, equal protection violations and retaliatory discharge have already been litigated to final judgment by the federal court, and that collateral estoppel bars re-litigation of these issues. Second, they argue that plaintiff was an at-will employee with no property right in his employment. We will consider each argument separately.

## I. Collateral Estoppel

[2] Under the doctrine of collateral estoppel, when an issue has been fully litigated and decided, it cannot be contested again between the same parties, even if the first adjudication is conducted in federal court and the second in state court. *King*, 284 N.C. at 359, 200 S.E.2d at 807. Plaintiff argues, however, that collateral estoppel cannot bar a state constitutional claim based on a denial of equal protection or due process, regardless of previous federal court adjudications, because only North Carolina courts can " '[answer] with finality' " " '[w]hether rights guaranteed by the Constitution of North Carolina have been provided . . . .' " *Evans v. Cowan*, 122 N.C. App. 181, 184, 468 S.E.2d 575, 577, *disc. review denied, appeal retained*, 343 N.C. 510, 471 S.E.2d 634, *affirmed*, 345 N.C. 177, 477 S.E.2d 926 (1996) (quoting *State v. Arrington*, 311 N.C. 633, 643, 319 S.E.2d 254, 260 (1984)). Plaintiff contends that since "[o]ur courts . . . when construing provisions of the North Carolina Constitution, are *not* bound by opinions of the federal courts 'construing even identical provisions in the Constitution of the United States[,]' " defendants' collateral estoppel argument fails. *Evans*, 122 N.C. App. at 183-84, 468 S.E.2d at 577. Plaintiff also bases his argument upon our recent decision in *City-Wide Asphalt Paving, Inc. v. Alamance County*, 132 N.C. App. 533, 513 S.E.2d 335, *appeal dismissed and disc. review denied*, 350 N.C. 826, 537 S.E.2d 815 (1999), which held that neither *res judicata* nor collateral estoppel barred plaintiff's state constitutional claims, even though plaintiff's claims under the federal constitution had been previously litigated in federal court.

We find neither *Evans* nor *City-Wide* controlling in the instant case. Unlike the case before us, the issue before the *Evans* Court was "whether plaintiff's state constitutional claims against defendants are barred by *res judicata*"—not by collateral estoppel. *Evans*, 122 N.C. App. at 183, 468 S.E.2d at 577. In *Evans*, plaintiff's claims, based on violations of both the federal and the state constitutions, were initially litigated in federal court, which granted summary judgment to

defendants as to all but the state constitutional claims. On remand to state court, defendants argued that plaintiff's claims under the state constitution were identical to plaintiff's claims under the federal constitution, and therefore plaintiff's subsequent litigation was barred under the doctrine of *res judicata*. Affirming that North Carolina courts " 'have the authority to construe our own constitution differently from the construction . . . of the Federal Constitution,' " this Court held that "the claims asserted by the plaintiff in the State Court on the basis of the North Carolina Constitution are not identical to the claims asserted by the plaintiff in the Federal Court on the basis of the United States Constitution . . . ." *Evans*, 122 N.C. App. at 184, 468 S.E.2d at 577. Thus, concluded the Court, the doctrine of *res judicata* did not bar plaintiff's claim.

We also find the decision in *City-Wide* distinguishable from the instant case. There, plaintiff appealed its state constitutional law claims to this Court from the trial court's grant of defendants' summary judgment motion. Confusing the principles of collateral estoppel with those of *res judicata*, defendants argued that, because plaintiff's claims under the U.S. Constitution had been previously determined, and because those claims were identical to plaintiff's claims based on violations of the North Carolina Constitution, plaintiff was collaterally estopped from re-litigating "identical issues . . . determined by the federal court." *City-Wide*, 132 N.C. App. at 536, 513 S.E.2d at 337. Defendants failed to specify, however, what the "identical issues" decided by the federal court were. This Court rejected defendants' argument, reaffirming *Evans*' principle that claims brought under the North Carolina Constitution must be independently determined from claims brought under the U.S. Constitution. Thus, neither *res judicata* nor collateral estoppel barred plaintiff's claims.

Like the defendants in *City-Wide*, plaintiff in the instant case conflates the doctrines of collateral estoppel and *res judicata*. The *City-Wide* defendants argued that, because the *claims* in the federal and state courts were essentially identical, the *issues* to be decided by each court were necessarily the same and collateral estoppel barred their re-litigation. Here, plaintiff contends that, because his *claims* in federal and state court are different, the *issues* cannot be the same, and that therefore collateral estoppel cannot apply. We disagree. Although plaintiff's present state court claims are different from those brought in federal court, his state court claims may contain issues previously litigated and determined in the federal court. Thus,

plaintiff may be collaterally estopped from re-litigating these issues. To hold otherwise, as plaintiff suggests we should, would mean that state courts are *never* barred from hearing state constitutional claims or issues pertinent to such claims, even when such issues have been previously litigated in the federal courts. Such a finding would directly violate the underlying principle of judicial economy that precipitated the creation of the collateral estoppel and *res judicata* doctrines as expressed in *King* and *Bockweg*. We reaffirm, therefore, that collateral estoppel may prevent the re-litigation of issues that are necessary to the decision of a North Carolina constitutional claim and that have been previously decided in federal court.

**[3]** To determine whether collateral estoppel prevents the re-litigation of issues presented by plaintiff in the instant case, we must first ascertain whether issues raised by the present litigation and dispositive of plaintiff's claim are identical to issues decided by the federal court. Collateral estoppel applies when the following requirements are met:

> (1) [t]he issues to be concluded must be the same as those involved in the prior action; (2) in the prior action, the issues must have been raised and actually litigated; (3) the issues must have been material and relevant to the disposition of the prior action; and (4) the determination made of those issues in the prior action must have been necessary and essential to the resulting judgment.

*King*, 284 N.C. at 358, 200 S.E.2d at 806. Here, plaintiff asserts claims under the North Carolina Constitution against defendants for racial discrimination, equal protection violations and retaliatory discharge. We will consider the applicability of collateral estoppel for each claim in turn.

To prevail upon a claim for racial discrimination in either a federal or state court in North Carolina, a plaintiff must establish improper motivation on defendant's part by proffering evidence of discriminatory intent. *Dept. of Correction v. Gibson*, 308 N.C. 131, 138, 301 S.E.2d 78, 83 (1983) (adopting federal guidelines for discrimination cases in North Carolina and noting that the plaintiff carries the burden of showing intentional discrimination by defendant). In the instant case, the issue of whether defendants intentionally discriminated against plaintiff was fully litigated in the federal court. After reviewing all of the evidence, the federal court found that plaintiff failed to present "any 'direct evidence of a purpose [by defend-

ants] to discriminate [against plaintiff] or circumstantial evidence of sufficiently probative force to raise a genuine issue of material fact.' " The federal court then granted defendants' motion for summary judgment on plaintiff's claim for racial discrimination. We hold that the issue of discriminatory intent by defendants was conclusively determined in the federal court, and thus plaintiff is collaterally estopped from re-litigating that issue in this action.

Plaintiff's failure in federal court to establish discriminatory intent by defendants also bars litigation of his equal protection violation claim in state court. In order to prevail upon an equal protection violation claim under the North Carolina Constitution, "the burden is upon the complainant to show the intentional, purposeful discrimination upon which he relies." *Kresge Co. v. Davis*, 277 N.C. 654, 662, 178 S.E.2d 382, 386 (1971). As the federal court has already conclusively ruled against plaintiff upon the issue of discriminatory intent by defendants, collateral estoppel prevents the plaintiff from proceeding on this claim.

Plaintiff also alleges a claim against defendants for retaliatory discharge. During his employment with NCCES, plaintiff was President of the North Carolina Association of Extension Minorities (NCAEM), a group organized to promote African-American interests within the extension agency. Plaintiff asserts that in his capacity as President, he often "spoke out on matters of public concern regarding trends and activities within the Extension Service that were adverse to the interests of African American extension agents and farmers." Plaintiff argues that defendants fired him for his NCAEM leadership, thus violating his constitutionally protected rights of freedom of speech and association.

In challenging an adverse employment decision for violation of constitutional rights, an employee must show that the "protected activity was a substantial or motivating factor in the employer's decision." *Lenzer v. Flaherty*, 106 N.C. App. 496, 509, 418 S.E.2d 276, 284, *disc. review denied*, 332 N.C. 345, 421 S.E.2d 348 (1992). Although evidence of retaliation may often be completely circumstantial, the causal connection between the protected activity and the discharge "must be something more than speculation." *Brooks v. Stroh Brewery Co.*, 95 N.C. App. 226, 237, 382 S.E.2d 874, 882, *disc. review denied*, 325 N.C. 704, 388 S.E.2d 449 (1989).

In the instant case, plaintiff argued in the federal court that his membership in NCAEM, among other things, triggered defendants'

decision to fire him. The federal court found no evidence, direct or indirect, to support plaintiff's claim, stating that "[n]o reasonable jury could find that McCallum's activities with the NCAEM . . . were a 'motivating part' of his termination . . . ." Thus, the federal court ruled against plaintiff on the exact issue that plaintiff now raises in state court. Plaintiff is therefore collaterally estopped from seeking a state court resolution on the issue of a causal connection between plaintiff's constitutionally protected activities and the adverse employment action taken by defendants. Because the lack of a causal connection is fatal to plaintiff's claim for retaliatory discharge, defendants are entitled to summary judgment on this claim.

The issues of defendants' discriminatory intent and improper motivation were tried in the federal court after full discovery; resolution of those issues was material and necessary to the judgment in that court. The doctrine of collateral estoppel therefore bars the relitigation of these issues in our state trial courts. Because plaintiff cannot, as a matter of law, succeed on his claims, the trial court erred when it refused to grant defendants' motion for summary judgment on plaintiff's claims of racial discrimination, equal protection violations, and retaliatory discharge.

## II. Due Process

[4] Defendants also argue that they are entitled to summary judgment on plaintiff's claim that his right to due process as guaranteed by the North Carolina Constitution was violated. Defendants contend that plaintiff is an at-will employee and is, therefore, not entitled to a property right in his employment that would support a claim for due process violations. Alternatively, defendants argue that, if plaintiff is not an at-will employee, he has statutory remedies under the State Personnel Act which he must first exhaust before seeking constitutional reparations.

In North Carolina, both private and public employees may be classified as "at-will" employees. An employer may discharge an "at-will" employee for any reason, including those which are arbitrary, irrational, or illogical, without incurring liability. *Woods v. City of Wilmington*, 125 N.C. App. 226, 229, 480 S.E.2d 429, 432 (1997). An at-will employee has no protected property right in his employment, unless such right is created by statute, ordinance or contract. *Evans v. Cowan*, 132 N.C. App. 1, 6-7, 510 S.E.2d 170, 174; *Peace v. Employment Sec. Comm'n*, 349 N.C. 315, 321, 507 S.E.2d 272, 277

McCALLUM v. N.C. COOP. EXTENSION SERV.

[142 N.C. App. 48 (2001)]

(1998). A property interest may also be created if there are " 'mutually explicit understandings that support [a] claim of entitlement . . . .' " *Woods*, 125 N.C. App. at 232-33, 480 S.E.2d at 433 (quoting *Perry v. Sindermann*, 408 U.S. 593, 601, 33 L. Ed. 2d 570, 580 (1972)). Once a property interest in employment is established, it is protected by Article I, Section 19 of the North Carolina Constitution, which states that "[n]o person shall be . . . in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19; *Woods*, 125 N.C. App. at 230, 480 S.E.2d at 432.

The State Personnel Act provides one means by which public employees may gain a protected right in employment. Section 126-35 of that Act provides that "[n]o career State employee subject to the State Personnel Act shall be discharged, suspended, or demoted for disciplinary reasons, except for just cause." N.C. Gen. Stat. § 126-35(a) (1999). Section 126-5, however, specifically exempts from the protection of the State Personnel Act all "[i]nstructional . . . staff . . . of The University of North Carolina." N.C. Gen. Stat. § 126-5(c1)(8) (1999).

Plaintiff was employed as an Agricultural Extension Agent with the North Carolina Cooperative Extension Service when he was discharged. The Smith-Lever Act created cooperative extension services "[i]n order to aid in diffusing among the people of the United States useful and practical information on subjects relating to agriculture, home economics, and rural energy, and to encourage the application of the same." Smith-Lever Act, 7 U.S.C. § 341 (1994). Cooperative agricultural extension work "consist[s] of the development of practical applications of research knowledge and giving of instruction . . . in agriculture." *Id.* at § 342. Thus, NCCES was established "for the specific purpose of extending the educational service of the University to the people of the state . . . ."

Extension agents are "professional member[s] of the faculty of North Carolina State University or North Carolina A&T State University," both of which are part of The University of North Carolina. One of an agent's main functions is to "[d]evelop[] and maintain[] a comprehensive understanding of the role of the North Carolina Cooperative Extension Service as an educational agency." According to the Associate Dean of the College of Agriculture and Life Sciences at North Carolina State University, who also serves as Director of NCCES, extension agents are "EPA" positions. "EPA" is an abbreviation designating those employees who are exempt from the

State Personnel Act. We find that, as an Agricultural Extension Agent, plaintiff was part of the instructional staff of the UNC system and therefore exempt from the State Personnel Act. Plaintiff cannot establish a property right through the State Personnel Act.

Plaintiff contends that, even if he is not subject to the State Personnel Act, there remain genuine issues of material fact that support plaintiff's claim of a property interest based on "mutually explicit understandings" of continued employment between plaintiff and defendants. To support his claim, plaintiff points out that defendants' letter of July 1993 appointing him to the County Extension Director position did not explicitly state that the position would be "at-will." Plaintiff notes that it was defendants' policy at the time to write "AT WILL" on appointment letters to emphasize the at-will nature of the employment. Because plaintiff's letter lacked the words "AT WILL," he argues that the appointment letter is evidence of "mutually explicit understandings" of plaintiff's continued employment with defendants. We disagree. Plaintiff was discharged from his position as an agent, not as a director. We find that the letter appointing plaintiff to the position of County Extension Director reveals no understanding between plaintiff and defendants regarding his status as an Agricultural Extension Agent. Thus, the appointment letter cannot establish a property right for plaintiff.

Plaintiff also points to an addendum of a document entitled "North Carolina Cooperative Extension Service Promotion and Tenure Policy for County Extension Director" that plaintiff received when he was appointed to the County Extension Director position. The addendum states that, if after one year plaintiff's performance as Director is "unsatisfactory," then he would be reappointed "to a position comparable to the position previously held, if appropriate." Plaintiff contends that this document illustrates the "mutually explicit understandings" of continued employment that existed between himself and NCCES. Again, we must disagree with plaintiff. The tenure policy's conditional language—"if appropriate"—expresses the possibility, not a guarantee, of continued employment as an agent if plaintiff fails to perform satisfactorily in the Director position. Such a qualified statement cannot create the "mutually explicit understandings" of continued employment necessary to create a constitutionally protected property right.

Finally, plaintiff refers this Court to a Memorandum of Understanding that exists between defendants and the Richmond County Board of Commissioners (Board) as a further example of

McCALLUM v. N.C. COOP. EXTENSION SERV.

[142 N.C. App. 48 (2001)]

"mutually explicit understandings." As an agricultural extension service agent, plaintiff worked jointly for both NCCES and Richmond County, both of whom paid plaintiff's salary as an agent. To ensure a smooth working relationship, NCCES and the Board executed a "Memorandum of Understanding," in which NCCES agreed to discuss any termination procedures with the Board before discharging agents working in Richmond County. NCCES, however, discharged plaintiff without first discussing the matter with the Board. The Board subsequently expressed their displeasure with NCCES's action in a document entitled "Resolution Protesting the Procedure of the North Carolina Extension Service and the A & T State Agricultural Extension Program in Discharging Farm Agent Ben McCallum." In the resolution, the Board acknowledges that "the ultimate authority to appoint or separate employees in the Extension Service is the right of the Extension Service and the County Commissioners have no veto power . . . ." Because the Board's role in plaintiff's employment does not extend to any actual authority over NCCES's ability to discharge employees, the Memorandum of Understanding between the Board and NCCES could not create any expectations or "mutually explicit understandings" of continued employment between plaintiff and defendants. We do not find any evidence of such "mutually explicit understandings" that would transform plaintiff's "at-will" employment status and create a property right in plaintiff's employment. Plaintiff therefore remains an "at-will" employee.

In summary, because plaintiff was an employee at-will with no cognizable property right in his employment, he is barred from bringing a due process claim. There being no material issues of fact in dispute, defendants are therefore entitled to judgment as a matter of law. The trial court erred in failing to grant defendants' motion for summary judgment. The judgment of the trial court is, therefore, reversed and remanded for entry of an order granting defendants' motion for summary judgment.

Reversed and remanded with directions.

Judges WALKER and McGEE concur.