THOMAS M. URQUHART, JR., Administrator of the Estate of BETSY DERR URQUHART, deceased, Plaintiff v. EAST CAROLINA SCHOOL OF MEDCINE, Defendant

No. COA10-1255

(Filed 19 April 2011)

**1. Tort Claims Act— university medical school—medical negligence—collateral estoppel—jurisdiction**

The Industrial Commission did not err by granting summary judgment in favor of defendant for a medical negligence claim that plaintiff brought pursuant to the State Tort Claims Act under N.C.G.S. §§ 143-291 to 300.1A based on the doctrine of collateral estoppel. Plaintiff's challenges to the Commission's order based on the nature of the proceedings leading up to the entry of the summary judgment order and the contents of that order lacked merit. Further, plaintiff's "absence of jurisdiction" argument also lacked merit.

Appeal by plaintiff from order entered 7 July 2010 by the North Carolina Industrial Commission. Heard in the Court of Appeals 8 March 2011.

*Thomas M. Urquhart, Jr., pro se, plaintiff-appellant.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Amar Majmundar, for the State.*

ERVIN, Judge.

Plaintiff Thomas M. Urquhart, Jr., the administrator of the estate of his deceased wife, Betsy Derr Urquhart, appeals from an order entered by the North Carolina Industrial Commission granting a summary judgment motion filed by Defendant East Carolina School of Medicine relating to a medical negligence claim that Plaintiff brought against Defendant pursuant to the State Tort Claims Act, N.C. Gen. Stat. § 143-291 to 300.1A (2009). After careful consideration of Plaintiff's challenges to the Commission's order in light of the record and the applicable law, we conclude that the Commission's order should be affirmed.

## I. Factual Background

On 27 September 2000, Plaintiff filed a wrongful death suit in Pitt County Superior Court in which he alleged that Plaintiff's decedent died as the proximate result of the negligence of Pitt County Memorial Hospital and several specifically identified doctors and nurses. The individual defendant physicians subsequently moved for summary judgment on the grounds that Plaintiff's action had been brought against them in their official capacities as employees of a state hospital and that they were immune from suit pursuant to the doctrine of sovereign immunity. Although Judge W. Russell Duke, Jr., granted their summary judgment motion, this Court concluded that the defendant physicians were not entitled to rely on a sovereign immunity defense and reversed Judge Duke's decision. *See Urquhart v. Univ. Health Sys.*, 151 N.C. App. 590, 592, 566 S.E.2d 143, 145 (2002).

In January 2005, all defendants filed motions to disqualify Plaintiff's medical experts and for summary judgment. After conducting a hearing on the defendants' motions, Judge Clifton W. Everett, Jr., entered an order on 24 March 2005 concluding that "each of the expert witnesses designated by the Plaintiff and subsequently deposed by the Defendants pursuant to the discovery scheduling order, do not meet the requirements of Rule 702 of the North Carolina Rules of Evidence to be witnesses to give expert testimony on the appropriate standard of health care as defined in N.C. [Gen. Stat. §] 90-[21].12 in a medical malpractice action as defined by N.C. [Gen.

Stat. §] 90-21.11"; that, given the disqualification of Plaintiff's expert witnesses, Plaintiff is "unable to offer a forecast of evidence that showed, through competent evidence and witnesses, that any of the health care services provided by any of the defendants was not in accordance with the standard of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act[s] giving rise to the cause of action;" and that summary judgment should be granted in favor of all the defendants. As a result, Judge Everett dismissed the Pitt County civil action with prejudice.[1]

At approximately the same time that he filed the Pitt County civil action, Plaintiff initiated a proceeding before the Commission pursuant to the State Tort Claims Act in which he alleged that Defendant, "acting by and through its agents and employees, was negligent in the medical care and services rendered to" Plaintiff's decedent and that the negligence of these individuals "proximately caused" her death. On 27 March 2009, Defendant moved for summary judgment on the grounds that Judge Everett's decision to grant summary judgment in favor of the defendants in the Pitt County civil action barred, based on the doctrine of collateral estoppel, Plaintiff from maintaining a medical negligence claim against Defendant under the State Tort Claims Act.

On 6 May 2009, Defendant's motion was heard before Deputy Commissioner George T. Glenn, II. On 13 July 2009, Deputy Commissioner Glenn entered an order denying Defendant's motion. Defendant appealed Deputy Commissioner Glenn's order to the Commission. On 7 July 2010, the Commission entered an order by Commissioner Staci T. Meyer, in which Commissioners Christopher Scott and Danny L. McDonald joined, concluding that Judge Everett had "ruled" in the Pitt County civil action that none of the defendants whose conduct was at issue in the State Tort Claims Act proceeding had "committed medical malpractice, or were otherwise negligent in their care of" Plaintiff's decedent; that the "Superior Court['s] dismissal with prejudice was a complete and final adjudication on the merits;" and that "[P]laintiff is collaterally estopped from alleging medical negligence by [D]efendant through alleged medical malpractice of its employees under the State Tort Claims Act." As a result, the

---

1. According to Plaintiff's brief, his attempted appeal from Judge Everett's order was dismissed for non-compliance with the applicable provisions of the North Carolina Rules of Appellate Procedure and his subsequent *certiorari* petition was denied by this Court.

URQUHART v. EAST CAROLINA SCH. OF MED.

[211 N.C. App. 124 (2011)]

Commission granted Defendant's summary judgment motion. Plaintiff noted an appeal to this Court from the Commission's order.

## II. Legal Analysis

On appeal, Plaintiff contends that the Commission erred by concluding that his claim against Defendant under the State Tort Claims Act was barred by the doctrine of collateral estoppel. In essence, Defendant argues that the doctrine of collateral estoppel has no application in this case because Judge Everett never made a determination of the type necessary to collaterally estop him from relitigating the negligence issue and because, even if Judge Everett made a valid determination otherwise entitled to preclusive effect, he lacked the jurisdiction to do so. We disagree.

## A. Collateral Estoppel

" 'The companion doctrines of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion) have been developed by the courts for the dual purposes of protecting litigants from the burden of relitigating previously decided matters and promoting judicial economy by preventing needless litigation.' " *Williams v. City of Jacksonville Police Dep't*, 165 N.C. App. 587, 591, 599 S.E.2d 422, 427 (2004) (quoting *Bockweg v. Anderson*, 333 N.C. 486, 491, 428 S.E.2d 157, 161 (1993)).

> "Under the doctrine of *res judicata* or 'claim preclusion,' a final judgment on the merits in one action precludes a second suit based on the same cause of action between the same parties or their privies . . . . Under the companion doctrine of collateral estoppel, also known as 'estoppel by judgment' or 'issue preclusion,' the determination of an issue in a prior judicial or administrative proceeding precludes the relitigation of that issue in a later action, provided the party against whom the estoppel is asserted enjoyed a full and fair opportunity to litigate that issue in the earlier proceeding."

*Williams*, 165 N.C. App. at 591, 599 S.E.2d at 427 (quoting *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004) (internal citations and quotations omitted). Thus, the doctrine of collateral estoppel bars "the subsequent adjudication of a previously determined issue, even if the subsequent action is based on an entirely different claim." *Id.* (quoting *Whitacre*, 357 N.C. at 15, 591 S.E.2d at 880). The doctrine of collateral estoppel has been applied when successive lawsuits are brought before different tribunals with

different jurisdictional authority, such as the tribunals at issue here. For example, we have held that:

> Although plaintiff's present state court claims are different from those brought in federal court, his state court claims may contain issues previously litigated and determined in the federal court. Thus, plaintiff may be collaterally estopped from re-litigating these issues. To hold otherwise . . . would directly violate the underlying principle of judicial economy that precipitated the creation of the collateral estoppel and *res judicata* doctrines . . . . We reaffirm, therefore, that collateral estoppel may prevent the re-litigation of issues that are necessary to the decision of a North Carolina constitutional claim and that have been previously decided in federal court.

*McCallum v. N. C. Coop. Extension Serv.*, 142 N.C. App. 48, 53-54, 542 S.E.2d 227, 232-33, *appeal dismissed and review denied*, 353 N.C. 452, 548 S.E.2d 527 (2001) (citation omitted). "Collateral estoppel applies when the following requirements are met:

> '(1) the issues to be concluded must be the same as those involved in the prior action; (2) in the prior action, the issues must have been raised and actually litigated; (3) the issues must have been material and relevant to the disposition of the prior action; and (4) the determination made of those issues in the prior action must have been necessary and essential to the resulting judgment.' "

*McCallum*, 142 N.C. App. at 54, 542 S.E.2d at 233 (quoting *King v. Grindstaff*, 284 N.C. 348, 358, 200 S.E.2d 799, 806 (1973)). As the Commission correctly determined, all of the necessary prerequisites for the application of the doctrine of collateral estoppel exist in this case.

On the one hand, the Pitt County civil action initiated by Plaintiff sought recovery of damages from a number of physicians and health care providers who did not qualify as state agencies for purposes of the State Tort Claims Act. On the other hand, his proceeding against Defendant, a state agency, was filed with the Commission under the State Tort Claims Act. Plaintiff's assertion of a right to recover compensation from Defendant under the State Tort Claims Act was predicated on alleged deviations from the applicable standard of care committed by the same defendant physicians whose conduct was at issue in the Pitt County civil action. *See Taylor v. Jackson Training School*, 5 N.C. App. 188, 191, 167 S.E.2d 787, 789 (1969) (stating that,

"[b]efore an award of damages can be made under the Tort Claims Act, there must be a finding of a negligent act by an officer, employee, servant or agent of the State"). As a result, both the Pitt County civil action and the State Tort Claims Act proceeding rested on the same allegation—that the defendant physicians deviated from the applicable standard of care in connection with their treatment of Plaintiff's decedent. The only difference between the two proceedings is that, in the Pitt County civil action, Plaintiff sought damages from the defendant physicians in their individual capacity, while, in his State Tort Claims Act proceeding, Plaintiff sought damages from the State as the result of the alleged negligence of the same defendant physicians. Despite the fact that these two proceedings were initiated in and have been litigated in different tribunals and the fact that the two proceedings involved different parties, the validity of both proceedings hinges on Plaintiff's ability to establish that the same defendant physicians deviated from the applicable standard of care in connection with their treatment of Plaintiff's decedent. Thus, a common issue is central to both proceedings.

The remaining components of collateral estoppel are also present here. The Pitt County civil action ended when the Superior Court entered an order concluding that Plaintiff had failed to adduce competent medical evidence tending to show that the defendant physicians had deviated from the applicable standard of care in connection with the treatment that they provided to Plaintiff's decedent and granting summary judgment against Plaintiff and in favor of the defendants, including the defendant physicians, on the grounds that Plaintiff had failed to forecast any evidence tending to show that the defendants acted negligently. " '[I]n general, a cause of action determined by an order for summary judgment is a final judgment on the merits.' " *Hill v. West*, 189 N.C. App. 194, 198, 657 S.E.2d 698, 700 (2008) (quoting *Green v. Dixon*, 137 N.C. App. 305, 310, 528 S.E.2d 51, 55, *aff'd per curiam*, 352 N.C. 666, 535 S.E.2d 356 (2000)). As a result, the trial court's decision to grant summary judgment in favor of the defendant physicians in the Pitt County civil action constituted an adjudication on the merits of the issue of the extent to which the defendant physicians deviated from the applicable standard of care, which, as we have already established, is an issue critical to both the Pitt County civil action and the State Tort Claims Act proceeding. Moreover, this issue was material and relevant to the disposition of the Pitt County civil action, and the manner in which the trial court decided this issue was necessary and essential to the resulting judg-

ment. As a result, we conclude that each of the elements of a valid collateral estoppel is present in this instance.

### B. Adequacy of the Superior Court's Determination

In seeking to persuade us that the Commission erred by concluding that his claims against Defendant were barred by the doctrine of collateral estoppel, Plaintiff contends that the Commission erroneously found that Judge Everett's decision to grant summary judgment in favor of the defendants in the Pitt County civil action "determined that the factual issue of whether the named defendants in the Superior Court case were negligent" on the grounds that Judge Everett "could [not] have made a determination of the disputed fact of negligence as part of a summary judgment hearing." In essence, Plaintiff appears to argue that Judge Everett had no authority to make a factual determination at the time that he granted summary judgment in favor of the defendant physicians in the Pitt County civil action and that only a determination made by means of a jury verdict or findings and conclusions made by a trial judge after a full hearing on the merits is entitled to preclusive effect under the doctrine of collateral estoppel. After carefully examining the arguments advanced in Plaintiff's brief, we conclude that this aspect of Plaintiff's position rests on a misapprehension of the nature of Judge Everett's order, the Commission's interpretation of that document, and the doctrine of collateral estoppel.

In his summary judgment order, Judge Everett stated, among other things, that:

. . . [B]ased upon the undisputed deposition testimony of the Plaintiff's expert witnesses Charles Vaughan, M.D., David Seignious, M.D. and Kimberly Warlick, R.N., . . . the expert witnesses designated by the Plaintiff and subsequently deposed by the Defendants . . . do not meet the requirements of Rule 702 of the North Carolina Rules of Evidence to be witnesses to give expert testimony on the appropriate standard of health care . . . in a medical malpractice action[;]

. . . [B]ased upon the undisputed evidence contained in the record . . . [,] the Plaintiff was unable to offer a forecast of evidence that showed, through competent evidence and witnesses, that any of the health care services provided by any of the defendants was not in accordance with the standard of practice among members of the same health care profession with similar training and expe-

rience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action; . . . .

In light of these determinations, Judge Everett concluded that:

> [P]laintiff failed to offer any competent evidence at the summary judgment hearing to satisfy the requirements of N.C. [Gen. Stat. §] 90-21.12; and

> [B]ased on the foregoing, . . . [,] there is now no genuine issue as to any material fact and . . . the Defendants are entitled to judgment [] as a matter of law.

Plaintiff's argument to the contrary notwithstanding, this language clearly shows that, rather than making an impermissible factual finding concerning the negligence of the defendant physicians, Judge Everett concluded as a matter of law that Plaintiff had failed to forecast competent and admissible evidence tending to show that the defendant physicians had deviated from the applicable standard of care in connection with their treatment of Plaintiff's decedent and that they were entitled to judgment as a matter of law for that reason. Such determinations resolve questions of law and are properly considered in evaluating the merits of a summary judgment motion.

According to well-established principles of North Carolina law, Judge Everett had ample authority to evaluate the competency and sufficiency of Plaintiff's evidentiary forecast in addressing the merits of the defendants' summary judgment motion. " '[O]nce the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a prima facie case at trial.' " *Pacheco v. Rogers & Breece, Inc.*, 157 N.C. App. 445, 448, 579 S.E.2d 505, 507 (2003) (quoting *Gaunt v. Pittaway*, 139 N.C. App. 778, 784-85, 534 S.E.2d 660, 664 (2000), *cert. denied*, 353 N.C. 371, 547 S.E.2d 810 (2001)). " 'To hold otherwise . . . would be to allow plaintiffs to rest on their pleadings, effectively neutralizing the useful and efficient procedural tool of summary judgment.' " *Id.* (quoting *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 64, 414 S.E.2d 339, 342 (1992)). Thus, nothing in our analysis of Judge Everett's summary judgment order indicates that he made an improper factual determination in the course of determining that summary judgment should be entered against Plaintiff and in favor of the defendant physicians.

Moreover, as we have already noted, "a cause of action determined by an order for summary judgment is a final judgment on the merits." *Green*, 137 N.C. App. at 310, 528 S.E.2d at 55. In light of that basic legal principle, the Commission properly determined that Judge Everett's decision to grant summary judgment in favor of the defendant physicians in the Pitt County civil action constituted "a complete and final adjudication on the merits." Plaintiff neither acknowledges this general rule in his brief, nor argues that it does not apply in this instance. Instead, Plaintiff erroneously contends that the Pitt County summary judgment order does not constitute an adjudication on the merits because "neither side presented any evidence on the factual issue of negligence as to any of the defendants." Plaintiff cites no authority in support of his implied assertion that the presentation of testimony and the resolution of factual conflicts by a jury verdict or by means of a trial judge's findings of fact and conclusions of law is a necessary prerequisite to a valid adjudication on the merits for collateral estoppel purposes, and we know of none. On the other hand, the adoption of Plaintiff's implicit position would completely eviscerate the well-established general rule that a summary judgment order constitutes a decision on the merits. As a result, we conclude that Plaintiff's challenges to the Commission's order based on the nature of the proceedings leading up to the entry of Judge Everett's summary judgment order and the contents of that order lack merit.

## C. Jurisdiction

In addition to arguing that Judge Everett's order does not constitute a determination entitled to preclusive effect for collateral estoppel purposes, Plaintiff argues that Judge Everett's order is not entitled to preclusive effect for jurisdictional reasons as well. As Plaintiff correctly notes, "[i]n analyzing collateral estoppel, the North Carolina Courts have restricted its application to issues over which the prior court had jurisdiction." Thus, " '[w]here the [tribunal] adjudicating the prior proceeding lacked jurisdiction over an issue, the [actually litigated and necessary] element of collateral estoppel has not been met.' " *Gregory v. Penland*, 179 N.C. App. 505, 514, 634 S.E.2d 625, 631 (2006) (quoting *Meehan v. Cable*, 127 N.C. App. 336, 340, 489 S.E.2d 440, 443 (1997)). Accordingly, to the extent that a decision for which preclusive effect is claimed was made by a tribunal that lacked the authority to make that decision, such a decision cannot logically provide a valid basis for precluding the relitigation of that issue in a forum with the authority to determine the rights and liabilities of the parties. We conclude, however, that this principle, which is most

clearly articulated in the two cases upon which Plaintiff places principal reliance, has no bearing upon the proper resolution of this case.

In *Gregory*, the plaintiffs were injured while riding in a military vehicle driven by defendant's decedent, a National Guardsman activated as the result of a state of emergency declared by the Governor. The plaintiffs filed a civil suit against defendant's decedent in the Brunswick County Superior Court and a separate action against the North Carolina National Guard with the Commission under the State Tort Claims Act. According to N.C. Gen. Stat. § 166A-14(a):

> Neither the State nor any political subdivision thereof, nor, except in cases of willful misconduct, gross negligence or bad faith, any emergency management worker . . . complying with or · reasonably attempting to comply with this Article or any order, rule or regulation promulgated pursuant to the provisions of this Article or pursuant to any ordinance relating to any emergency management measures enacted by any political subdivision of the State, shall be liable for the death of or injury to persons, or for damage to property as a result of any such activity.

Prior to resolution of the plaintiff's Superior Court claims, the Commission ruled in favor of the National Guard in the State Tort Claims Act case. The defendant argued that the plaintiffs' attempt to establish that the defendant's decedent was grossly negligent, and, therefore, liable for the personal injuries he allegedly inflicted on them was barred by the doctrine of collateral estoppel. We held that, since the Commission had no authority to find the National Guard liable on the basis of the gross negligence of the defendant's decedent, the Commission "lacked jurisdiction to address [the defendant's decedent's] gross negligence" and could not, for that reason, "properly make any findings on the parties' factual allegations." *Gregory*, 179 N.C. App. at 515, 634 S.E.2d at 632. As a result, we concluded that the Commission's determination with respect to the issue of whether the defendant's decedent's conduct constituted gross negligence did not collaterally estop the plaintiffs from relitigating the gross negligence issue in Superior Court. The gist of our decision in *Gregory* was that a ruling by a tribunal on an issue over which it lacks jurisdiction does not collaterally estop relitigation of that issue in a proper forum. In this case, however, the Pitt County Superior Court clearly had jurisdiction over the issue of whether the defendant physicians deviated from the applicable standard of care in connection with their treatment of Defendant's decedent, rendering our decision in *Gregory* inapplicable to a proper resolution of the present case.

Similarly, this Court's opinion in *Alt v. John Umstead Hospital*, 125 N.C. App. 193, 479 S.E.2d 800, *disc. review denied*, 345 N.C. 639, 483 S.E.2d 702 (1997), upon which Plaintiff also relies, is readily distinguishable from the facts in the present case. In *Alt*, the plaintiff sought to recover "damages against individual physicians and officials at defendant hospital" based on claims sounding in malicious prosecution, false imprisonment, and deprivation of his constitutional and statutory rights. *Alt*, 125 N.C. App. at 194, 479 S.E.2d at 801. In Superior Court, summary judgment was granted for the defendants. Subsequently, the plaintiff initiated a proceeding in the Commission against the hospital under the State Tort Claims Act on the basis of alleged medical negligence. Before the Commission, the hospital argued that the Superior Court's decision to grant summary judgment in favor of the defendants in the civil action barred the plaintiff from arguing a negligence claim against the hospital under the State Tort Claims Act on *res judicata* and collateral estoppel grounds. This Court first noted that "the second requirement that the issues in the two actions be identical is not met" because, "[i]n plaintiff's first action, the dispositive issues[] were whether a criminal proceeding initiated against plaintiff was terminated in his favor, and whether the individual defendants, who were employees of defendant hospital, restrained defendant in violation of requisite procedures and in the exercise of professional judgment," while, "[i]n the instant action, the dispositive issue is whether the actions of defendant's employees conformed to the applicable standards of medical practice among members of the same health care profession with similar training and experience." *Alt*, 125 N.C. App. at 198, 479 S.E.2d at 803-04. In addition, we stated that "the third requirement that the issue must have been raised and actually litigated is not satisfied" because, "[p]ursuant to the State Tort Claims Act, exclusive original jurisdiction of claims against the State or its institutions and agencies, in which injury is alleged to have occurred as a result of the negligence of an employee of the State, is vested in the . . . Commission" and that "plaintiff's negligence claim against defendant could not have been adjudicated in the prior proceeding because the Superior Court has no jurisdiction over a tort claim against the State." *Alt*, 125 N.C. App. at 198, 479 S.E.2d at 804. In other words, we rejected the hospital's effort to rely on the doctrine of collateral estoppel in the State Tort Claims Act proceeding because the issue of the hospital's negligence had not been raised in the Superior Court and, in any event, because the Superior Court would not have had jurisdiction over any such claim against the hospital.

Like *Gregory*, *Alt* is distinguishable from the present case. First, unlike the situation at issue in *Alt*, the issue in dispute between Plaintiff and the defendant physicians in the Pitt County civil action, which revolved around the extent to which the defendant physicians deviated from the applicable standard of care, is identical to the issue in dispute in this case, which is whether Defendant is liable to Plaintiff on the basis of the same alleged deviation from the applicable standard of care by the same individuals. Secondly, while it is certainly true that a direct claim against the hospital could not have been properly litigated in the Pitt County civil action, no effort to litigate such a claim was made before that tribunal. Put another way, while *Alt* would clearly preclude the Commission from relying, in the present case, on a determination made in connection with a claim asserted against Defendant in the Pitt County civil action based on the Commission's exclusive jurisdiction under the State Tort Claims Act, no such determination is at issue here. Instead, the issue addressed in the Pitt County civil action was whether the defendant physicians, whose liability must be established in order for Plaintiff to successfully assert his claim against Defendant under the State Tort Claims Act, had deviated from the applicable standard of care in connection with their treatment of Plaintiff's decedent. Moreover, nothing in *Alt* suggests that, had the issue of the defendant physicians' negligence actually been litigated in the Superior Court action, collateral estoppel principles would not have precluded relitigation of the same issue before the Commission. As a result, contrary to Plaintiff's contention, our decision in *Alt* does not compel the result that Plaintiff urges us to reach, which is contrary to established collateral estoppel principles.

We conclude that, although Plaintiff's <u>claim</u> against Defendant was not litigated in the Pitt County civil action, the <u>issue</u> of the extent to which the defendant physicians deviated from the applicable standard of care was properly and actually litigated before the Pitt County Superior Court. Since Plaintiff's claim under the State Tort Claims Act is based entirely on the theory that Defendant is derivatively liable for the alleged failure of the same physicians whose conduct was at issue in the Pitt County civil action to comply with the applicable standard of care and since the extent to which these same individuals deviated from the applicable standard of care in connection with their treatment of Plaintiff's decedent was addressed and decided in the Pitt County civil action, neither *Gregory* nor *Alt* is controlling on these facts. As a result, Plaintiff's "absence of jurisdiction" argument in opposition to the Commission's decision lacks merit as well.

## III Conclusion

For the reasons set forth above, we conclude that the Commission properly granted summary judgment in favor of Defendant with respect to Plaintiff's State Tort Claims Act claim. The extent to which Plaintiff forecast competent and sufficient evidence tending to show that the defendant physicians deviated from the applicable standard of care in connection with their treatment of Plaintiff's decedent was properly before the trial court in the Pitt County Superior Court action. Judge Everett's summary judgment order, which concluded that Plaintiff failed to present any competent evidence of negligence on the part of the physician defendants, constituted a valid adjudication on the merits. The claim asserted in Plaintiff's State Tort Claims Act action is predicated on the assertion that Plaintiff's decedent was injured by the negligence of the same defendant physicians whose conduct was at issue in the Pitt County civil action. In view of the fact that Judge Everett's summary judgment order resolved this issue against Plaintiff, Plaintiff is collaterally estopped from attempting to relitigate it before the Commission, a result which would be fatal to any attempt by Plaintiff to recover damages under the State Tort Claims Act. As a result, we conclude that the Commission's order granting summary judgment in favor of Defendant should be, and hereby is, affirmed.

AFFIRMED.

Judges ROBERT C. HUNTER and STEPHENS concur.